**AA-96-12** 1

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| Manuel López Pons<br>    Patrono–Apelado<br><br>V.<br><br>Corporación del Fondo del Seguro del Estado<br>    Asegurador–Apelante | Apelación de Agencia Administrativa<br><br>98TSPR135 |

Número del Caso: AA-96-12

Abogado de Corporación del F.S.E.: Lcdo. Antonio Vidal Santiago

Abogado de Manuel López Pons:     Lcdo. Jorge Márquez Gómez

Agencia: Comisión Industrial

Fecha: 10/16/1998

Materia: Status Patronal

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Manuel López Pons

    Patrono-Apelado

       v.                              AA-96-12          APELACIÓN

Corporación del Fondo del
Seguro del Estado

    Asegurador-Apelante

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico a 16 de octubre de 1998

El 2 de noviembre de 1991, el obrero Carlos M. Ocrela Cedanos, empleado del Dr. Manuel López Pons, sufrió un accidente del trabajo, reportándose a la Corporación de Fondo del Seguro del Estado, en adelante, el Fondo. El 10 de septiembre de 1993, el Administrador del Fondo notificó su decisión en el caso declarando al Dr. López Pons patrono no asegurado. Fundamentó dicha decisión en que, de acuerdo a sus expedientes, el patrono no había radicado la declaración de nómina correspondiente al año 1990-1991 y el término de radicación, fijado por la Ley del Sistema de Compensaciones por Accidentes del

Trabajo[1], había expirado el 20 de julio de 1991.

Inconforme, el patrono apeló la referida decisión del Administrador del Fondo ante la Comisión Industrial. Alegó que: hacía varios años la referida Corporación le había expedido la Póliza Número 35-1-20-72556, que siempre había pagado la misma a tiempo y que desde 1990-1991 tenía un crédito a su favor pendiente de ser devuelto.

La vista pública se celebró el 5 de mayo de 1994. El patrono sometió en evidencia —entre otras cosas— varios documentos sin objeción del Asegurador. En primer lugar, presentó un listado proveniente de una computadora del Fondo del cual surge que para el 15 de marzo de 1991 el patrono, Dr. Manuel López Pons, tenía un crédito a su favor por cuarenta y siete dólares con noventa y cinco centavos ($47.95). Conforme a dicho documento, el referido crédito había aumentado a ciento cincuenta y siete dólares ($157.00) para el 1992 y a doscientos doce dólares con setenta y seis centavos ($212.76) para el 1993. Por otro lado, el patrono presentó una carta dirigida a él con fecha de 12 de agosto de 1991 y suscrita por el Sr. Jorge William Santiago, Jefe de la División de Intervenciones del Fondo.[2]

---

[1] Ley Núm. 45 de 18 de abril de 1935, según enmendada.
[2] El texto de la carta dirigida al Dr. López Pons y suscrita por el Agente del Fondo es el siguiente:

". . . .

Estimado patrono:

La Ley de Compensaciones por Accidentes del Trabajo dispone que todo patrono deberá presentar al Administrador, no más tarde del día 20 de julio de cada año, un estado expresando la cantidad total

Finalmente, el patrono presentó copia del cheque  por él emitido el 5 de septiembre de 1991, mediante el cual, pagaba la cantidad de cincuenta y dos dólares con sesenta y cuatro centavos ($52.64) correspondiendo a la carta que se le enviara el 12 de agosto de 1991; esto a pesar de estar consciente del crédito que tenía a su favor en el Fondo. Por su parte, el Fondo presentó la declaración de nómina

de jornales pagados durante el año económico anterior (julio 1ero a junio 30, 1991).

Además, la Ley faculta al Administrador a tasar, imponer y cobrar primas a aquellos patronos que no rindan su declaración de nómina. Cuando éste sea el caso, perderá la inmunidad que contra demandas en daños y perjuicios provee la Ley al patrono asegurado. Dicho patrono <u>vendrá obligado al pago de las primas así tasadas e impuestas</u> y además al pago de los gastos incurridos en los casos en que sea declarado patrono no asegurado.

Según nuestros récords, usted no ha radicado su declaración de nómina  para el año póliza 90-91. A los efectos de brindarle cubierta a sus actividades deberá radicar su declaración de nómina acompañada de $54.64 o el cincuenta  (50%) por ciento de dicha suma, en cuyo caso la cubierta comenzará a regir al recibo de dicho pago en nuestras oficinas. Al emitirse la notificación de cobro de prima, si ésta reflejara un adicional, será requisito indispensable el pago de la misma dentro de la fecha estipulada en la notificación para mantener la cubierta en el primer semestre.

Si radicó su declaración de nómina acompañada del pago correspondiente, favor de hacer caso omiso de esta comunicación.

Cordialmente,

JEFE SEGURO E INTERVENCIONES
OFICINA REGIONAL DE San Juan"

para el año 1990-1991 donde se señala que la misma se llenó "de oficio".[3]

De toda la prueba presentada quedó establecido que el patrono, Dr. López Pons, no radicó su declaración de nómina para el año 1990-1991, habiendo transcurrido o expirado el término que provee la Ley de Compensaciones para hacerlo sin que el Administrador del Fondo la recibiera. También quedó probado que el Jefe de la División de Intervenciones de Fondo envió una carta al Dr. López donde le indicaba que para que se le pudiera brindar cubierta debía pagar cincuenta y cuatro dólares con sesenta y cuatro centavos

_____

[3] De la página 4 del Informe del Oficial Examinador de la Comisión Industrial sometido el 13 de octubre de 1995 surge que:

"....

De oficio quiere decir que no hubo una declaración de nómina propiamente por parte del patrono, sino que tal y como lo dispone la Ley el Administrador tiene la facultad de no habiendo recibido la información o entendiendo que [la información recibida] es incorrecta, la información sobre la nómina del año anterior la puede hacer motu proprio. . . .

De acuerdo a la declaración de nómina del año anterior se transcribe una por un funcionario del Fondo del Seguro como que la nómina del año en curso es la misma del año anterior. Eso es básicamente lo que se hace cuando se llena de oficio por un oficial del Fondo. Se presume que sigue siendo la misma nómina ante la falta de someter el patrono una Declaración de Nómina. A nivel del Fondo cuando se intervienen las pólizas, que se utiliza la palabra `se liquida´ [sic] la póliza ahí se verifica la información de la Declaración de Nómina, que encuentran que no hay dicha declaración, entonces se hace de oficio, como explicara anteriormente y a base de eso se hace una factura, porque no hay en el expediente evidencia de que el patrono radicara su Declaración de Nómina a tiempo. . . ."

($54.64); cantidad que se calculó a base de la declaración de nómina "por conocimiento o de oficio" que realizara la referida agencia con relación al patrono, según le faculta la Ley de Compensaciones. Además, en la carta se le solicitaba que con el pago debía incluir su declaración de nómina correspondiente al año 1990-1991.

El Dr. López Pons, aun teniendo un crédito a su favor en el Fondo, en respuesta a dicha carta y con el obvio propósito de que se le brindara la cubierta, envió el pago que le fuera requerido mediante cheque emitido el 5 de septiembre de 1991. El mismo fue cobrado el 17 de septiembre de 1991. El Dr. López Pons, sin embargo, no radicó la planilla correspondiente.

Así las cosas, el 2 de noviembre de 1991, esto es, con posterioridad a que el cheque del patrono fuera cobrado, ocurre el accidente del trabajo de Carlos M. Ocrela Cedanos, empleado del Dr. López Pons. El 13 de octubre de 1995, el Oficial Examinador de la Comisión Industrial recomendó, en el informe por él preparado, confirmar la decisión del Administrador del Fondo sobre patrono no asegurado y en consecuencia, desestimar el recurso apelativo. El 7 de noviembre de 1995, la Comisión Industrial notificó su decisión de aceptar y hacer formar parte de su resolución el informe del Oficial Examinador que presidió la vista del caso y así confirmó la determinación del Administrador del Fondo sobre patrono no asegurado y desestimó el recurso apelativo. Además, la Comisión ordenó la devolución del caso a la Corporación

para que se realizara la liquidación y cobro al patrono no asegurado de los gastos incurridos en la atención del obrero lesionado. Inconforme, el patrono recurrió nuevamente ante la Comisión Industrial y solicitó que se dejara sin efecto la resolución notificada el 7 de noviembre de 1995.

El 11 de enero de 1996, la Comisión Industrial emitió resolución, en reconsideración, mediante la cual dejó sin efecto su resolución de vista pública notificada el 7 de noviembre de 1995 y revocó, de esta manera, la decisión del Administrador del sobre patrono no asegurado notificada el 10 de septiembre de 1993. Esto es, determinó que el Dr. López Pons estaba asegurado para la fecha del accidente laboral y ordenó al Fondo cumplir con su deber ministerial de acreditar los dineros pagados en exceso por este patrono a pólizas posteriores al accidente laboral.[4]

---

[4] La Comisión Industrial fundamentó su decisión de la siguiente manera:

> ". . . [A]duce el Abogado del Patrono que su cliente cumplió con su deber ante el Asegurador al hacer efectivo el pago de primas exigido por el Fondo del Seguro del Estado mediante comunicación escrita de fecha 12 de agosto de 1991 firmada por el Jefe de Seguro e Intervenciones de la Oficina Regional de San Juan de la Corporación del Fondo del Seguro del Estado (Exh. 1 parte patronal). El pago se efectuó mediante cheque de fecha 5 de septiembre de 1991 firmado por el patrono Dr. Manuel López Pons (Exh. 2 Patronal).
>
> Factualmente ha quedado establecido que el obrero sufrió un accidente laboral el 2 de noviembre de 1991, para esa fecha inclusive el patrono tenía un crédito a su favor por la cantidad de cuarenta y tres dólares con once centavos ($43.11).

El 7 de febrero de 1996 el Administrador del Fondo presentó ante nuestra consideración una apelación administrativa solicitando la revocación de la resolución en reconsideración dictada por la Comisión Industrial, alegando que la Comisión erró al:

"1- ... no concluir que el patrono apelado es un patrono no asegurado en relación con el accidente sufrido por su empleado Carlos M. Ocrela Cedanos el 2 de noviembre de 1991, por el fundamento de no haber radicado la declaración de nómina del año 90-91, a pesar de que:

(a) El Artículo 27 de la Ley de Sistema de Compensaciones por Accidentes del Trabajo, (11 LPRA sec. 28) expresamente dispone que todo patrono que no hubiese presentado su declaración de nómina dentro del término dispuesto (1 al 20 de julio) será considerado como un patrono no asegurado.

(b) La Comisión Industrial en su resolución en reconsideración, notificada el 11 de enero de 1996, concluyó como un hecho probado que el patrono no declaró nómina para el año póliza en controversia.

2- ... concluir contrario a derecho que al aceptar el Fondo del Seguro del Estado el cheque de $52.64 del patrono, éste subsanó la omisión de cumplir con la radicación de la declaración de nómina, y por tanto era un patrono asegurado.

3- ... concluir que la carta informativa del 12 de agosto de 1991, del Fondo del Seguro del Estado, al patrono apelado era una factura.

4- ... concluir que la facultad conferida por virtud del Artículo 25 de la Ley al Administrador de tasar, fijar y cobrar las primas motu proprio substituye la obligación

---

Damos por probado, además, que el patrono no declaró nómina para el año póliza en controversia y que el Fondo del Seguro del Estado al aceptar el cheque emitido por el Dr. Manuel López Pons antes de la ocurrencia del accidente declaró lo que se conoce como una nómina de oficio.

Esto fue así, ya que de lo contrario no acertaríamos a comprender la factura del Asegurador y el oportuno pago del Patrono. . . ."

del patrono de radicar su declaración de nómina, y que en efecto eso fue lo que ocurrió en el caso de autos."

Por considerar que todos los errores señalados están relacionados entre si, procedemos a discutirlos conjuntamente. La controversia hoy ante nos se circunscribe a determinar si un patrono que no radicó su declaración de nómina pero pagó la cantidad solicitádale por un agente del Fondo --luego de que éste último preparara una declaración de nómina "por conocimiento propio o de oficio"-- para poder extender la cubierta del seguro a sus empleados, es o no un patrono asegurado para fines de la Ley del Sistema de Compensaciones por Accidentes del Trabajo[5], en adelante, Ley de Compensaciones; ello, en relación con un accidente, sufrido por uno de sus empleados, con posterioridad a él haber pagado la prima requerida por el Fondo.

I

La Ley de Compensaciones es un estatuto con fines remediales que establece un sistema de seguro compulsorio y exclusivo para compensar a los obreros y empleados que sufran lesiones, se inutilicen o mueran como consecuencia de accidentes ocurridos en sus trabajos. Montaner v. Comisión Industrial, 59 D.P.R. 396, 399 (1941); Ortiz Pérez v. F.S.E., Opinión y Sentencia de 31 de octubre de 1994. Entre los fines de la Ley de Compensaciones se encuentra el promover el bienestar de los trabajadores, establecer el

---

[5] Ley Núm. 45 de 18 de abril de 1935, según enmendada; 11 L.P.R.A. sec. 1, et seq.

deber de los patronos de compensar a sus empleados o los beneficiarios de éstos y establecer el sistema de seguros y el método para proceder con las reclamaciones. Ortiz Pérez v. F.S.E., supra.

En cuanto al deber general de los patronos, el Artículo 18 de la Ley de Compensaciones establece que todos los patronos comprendidos dentro de las disposiciones de dicha Ley están obligados a pagar un seguro que le garantiza a sus obreros o empleados en el Fondo la compensación que éstos deben recibir por lesiones, enfermedad o muerte.[6] Cuando un patrono no asegura el pago de la referida compensación, según el Artículo 17 de la Ley de Compensaciones, incurre en la comisión de un delito menos grave y corresponde al Administrador de del Fondo, sus agentes o a agentes de los Departamentos del Trabajo o de Hacienda radicar la denuncia correspondiente para lograr la imposición de la penalidad establecida.[7]

Asimismo, en los casos en que el patrono no hubiera formalizado su seguro, la Ley de Compensaciones faculta al Administrador del Fondo a tasar, imponer y cobrar cuotas a ese patrono por todo el tiempo que hubiera permanecido sin asegurarse.[8] Uno de los requisitos que la Ley de Compensaciones le impone al patrono, en el proceso de asegurar a sus empleados, es radicar ante el Administrador de Fondo, en o antes del 20 de julio de cada año, un estado

---

[6] 11 L.P.R.A. sec. 19.
[7] 11 L.P.R.A. sec. 18.
[8] 11 L.P.R.A. sec. 26.

o declaración de nómina que incluya: el número de trabajadores por él empleados, la ocupación o industria de éstos y la cantidad de jornales que les pagó durante el año económico anterior, <u>ya que es sobre la suma de esos jornales que se computa la cuota o prima que debe pagar el patrono al asegurador</u>. La Ley de Compensaciones contempla que la omisión del patrono de presentar este estado o declaración de nómina constituye un delito menos grave. Además, establece que el patrono que no lo hubiere presentado será considerado como un patrono <u>no</u> asegurado.[9]

---

[9] El Artículo 27 de la Ley de Compensaciones dispone, en lo pertinente, lo siguiente:

> "Será deber de todo patrono el presentar al Administrador, no más tarde del día 20 de julio de cada año, un estado expresando el número de los trabajadores empleados por dicho patrono, la clase de ocupación o industria de dichos trabajadores y la cantidad total de jornales pagados a tales trabajadores o industrias durante el año económico anterior, Disponiéndose que a solicitud del patrono y por causa justificada, el Administrador podrá extender dicho término por un período no mayor de 15 días. Sobre la suma total de jornales declarados en ese estado será computada la cuota dispuesta en las secs. 26 y 27 de este título . . . .

> Si el patrono dejare de presentar dichos estados en las fechas arriba especificadas incurrirá en un delito menos grave castigable con una multa no menor de veinticinco (25) dólares ni mayor de mil (1,000) dólares, a juicio del tribunal, o cárcel mínima de quince (15) días y máxima de seis (6) meses. En caso de reincidencia se impondrán ambas penas. Cualquier sala del Tribunal de Primera Instancia, a instancias del Administrador del Fondo del Seguro del Estado, ordenará al patrono que presente los referidos estados en un término perentorio, y si no los presentare, la desobediencia a dicha orden constituirá desacato y será castigada como tal. Todo patrono que a sabiendas consignare falsamente las informaciones que por dichos estados se requieren, quedará sujeto a la misma pena prescrita por dejar de presentar los referidos estados.

> Cualquier patrono que haya estado cubierto por el Fondo del Seguro del Estado a la terminación del año económico anterior, y que estuviere cubierto a partir del día primero de julio del año corriente estará también cubierto dentro del término del primero al veinte de julio que se concede por este Capítulo para archivar la nómina o estado; Disponiéndose que todo patrono que no hubiere presentado el estado a que se refiere esta sección dentro del término que aquí se fija, será considerado como un patrono no asegurado. . . ." 11 L.P.R.A. sec. 28.

Ahora bien, en los casos en que el patrono deje de radicar la declaración de nómina en la fecha señalada por la Ley de Compensaciones o de acuerdo con ella, dicha Ley faculta al Administrador --con la ayuda de sus agentes debidamente autorizados-- a hacer una declaración "por conocimiento propio o de oficio", de acuerdo con los informes y datos que hubiere podido obtener. La ley establece que cualquier declaración presentada en esta forma y suscrita por el Administrador o por cualquiera de sus agentes será prima facie válida para todo fin legal.[10]

---

[10] El Artículo 25 de la Ley de Compensaciones dispone en parte:
"....

En caso de que algún patrono, de los comprendidos en este Capítulo, no hubiere formalizado el seguro correspondiente, el Administrador podrá tasarle, imponerle y cobrarle cuotas por todo el tiempo que hubiera permanecido sin asegurarse en la misma forma que si estuviese asegurado.

Las cuotas, una vez recaudadas, serán ingresadas en el Tesoro de Puerto Rico, en el Fondo del Seguro del Estado que se establece por este Capítulo.

Las cuotas serán impuestas a los patronos regulares o permanentes tan pronto se reciba en la oficina del Administrador la declaración de la nómina a que se hace mención más adelante, debiéndose tomar como base, sujeto a investigación y revisión, por el Administrador, la suma total de los jornales, sueldos y otras remuneraciones pagadas por el patrono a los trabajadores empleados por él durante el año anterior y los cuales trabajadores tuvieran o hubieran tenido derecho a beneficios de este Capítulo.

Si algún patrono dejare de hacer y presentar la declaración de nómina en la fecha prescrita por la ley, o de acuerdo con ella, o si voluntariamente o, de otro modo, hiciere una declaración falsa o fraudulenta o, que de acuerdo con la experiencia obtenida en relación a operaciones similares, fuere evidentemente inadecuada, el Administrador, por medio de sus agentes debidamente autorizados, hará la declaración por conocimiento propio y de acuerdo con los informes y datos que hubiere podido obtener. Cualquier declaración presentada en esta forma y suscrita por el Administrador o por cualquiera de sus agentes debidamente autorizados, será prima facie válida y suficiente para todo fin legal.

Si un patrono regular, eventual o temporero dejare de pagar el total de las cuotas preliminares o adicionales que le fueran impuestas legalmente dentro del término que le señalare el Administrador, éste podrá concederle una prórroga de treinta (30) días para que el patrono efectúe el pago total, y dicho pago total será un requisito indispensable para que el

Claro está, el hecho de que el Administrador cumpla con lo anterior no exime al patrono de radicar su propia declaración de nómina ya que, como hemos visto, la que prepara el Administrador del Fondo se basa en la nómina del año anterior y las cuotas así tasadas, impuestas y cobradas son sólo estimadas al no necesariamente estar calculadas sobre la información real del patrono. Es preciso que el Administrador del Fondo conozca cualquier cambio, si alguno, en el número de empleados, la ocupación de éstos y la cantidad de jornales pagados por el patrono ese año para así poder realizar los reajustes de las primas que le exige efectuar el Artículo 26 de la Ley de Compensaciones[11] o

Administrador pueda darle efectividad a cualquier póliza de seguro. . . ." 11 L.P.R.A. sec. 26. (Enfasis suplido).

[11] El Artículo 26 de la Ley de Compensaciones establece:

"A la terminación de cada año económico el Administrador comparará la nómina de cada patrono que pagare cuotas de acuerdo con este Capítulo en tal año económico con la nómina correspondiente al año económico precedente que le sirvió de base para tasar, imponer y recaudar las cuotas y si la nómina para el cual estuvo vigente el seguro es mayor que la correspondiente al precedente año económico para el cual fueron tasadas, impuestas y recaudadas dichas cuotas, el Administrador tasará e impondrá y recaudará tal y como se dispone en este Capítulo sobre la diferencia, cuotas adicionales en la misma forma y sobre la misma base en que fueron tasadas, impuestas y recaudadas las cuotas originales; y si la nómina para el año durante el cual estuvo vigente el seguro fuera menor que la del año económico anterior para el cual fueron tasadas, impuestas y recaudadas las cuotas, el Administrador del Fondo del Seguro del Estado reembolsará o acreditará, sin intereses o descuentos, del Fondo del Seguro del Estado la proporción de las cuotas correspondiente a la diferencia entre la nómina actual para el año durante el cual estuvo vigente

determinar que lo tasado impuesto y cobrado fue lo correcto.

Para lograr que el patrono cumpla con su obligación de radicar la declaración de nómina que le corresponde, el Artículo 27 de la Ley de Compensaciones --según ya citamos[12]-- faculta al Administrador del Fondo a solicitar de cualquier sala del Tribunal de Primera Instancia que le ordene al patrono presentar los referidos estados en un término perentorio y de éste no hacerlo, su omisión constituirá desacato y será castigado como tal.[13]

## II

Como podemos notar, la citada Ley de Compensaciones establece, por un lado, que el patrono que no rinde su planilla de nómina en o antes de la fecha señalada por dicha Ley será considerado como un patrono no asegurado y, por el otro lado, la Ley faculta al Administrador del Fondo, ante la referida omisión, a proceder a preparar --a base de la nómina del año anterior-- una declaración de nómina "por conocimiento propio o de oficio" y a determinar la cantidad a pagar por el patrono, de manera preliminar, y a recabar el pago de la misma. Como surge de la relación

---

el seguro y el año para el cual fueron tasadas, impuestas y recaudadas dichas cuotas, siempre y cuando que el Administrador pueda comprobar a su entera satisfacción que los jornales, sueldos y otras remuneraciones declaradas por el patrono en el estado o informe que más adelante se provee, han sido correctamente consignados." 11 L.P.R.A. sec. 27.

[12] Véase escolio número 10.

que de los hechos hiciéramos, eso precisamente fue lo que sucedió en el presente caso; con el hecho adicional de que el patrono aquí en controversia realizó dicho pago, <u>antes</u> de que su empleado sufriera el accidente en el empleo, pero <u>no</u> rindió la planilla correspondiente.

El patrono, Dr. Manuel López Pons, sostiene que, independientemente del hecho que él no había rendido la planilla que requiere la ley para la fecha del accidente, él era una patrono asegurado por cuanto el Fondo había hecho una planilla "de oficio", le había notificado una prima, y él había notificado la misma a pesar de, inclusive, la existencia de un crédito a su favor en el Fondo.

El Fondo, por el contrario, sostiene que el mero hecho de <u>no</u> rendir la planilla, en o antes del término fijado por la ley, convertía al Dr. López Pons en patrono no asegurado, independientemente de que la agencia hubiera procedido a preparar la planilla de oficio, a determinar y cobrar la prima a pagar, y de que el patrono hubiera pagado la cantidad de dinero preliminarmente determinada por el Fondo. En otras palabras, sostiene el Fondo que hasta tanto el patrono no rinda la planilla correspondiente, continúa siendo un patrono no asegurado. <u>Entendemos que le asiste la razón</u>.

A nuestro juicio la base de todo el andamiaje que representa el programa de seguro compulsorio conocido como el Fondo del Seguro del Estado es, precisamente, la

---

[13] 11 L.P.R.A. sec. 28.

radicación, por los patronos, de la planilla relativa a la nómina de sus empleados. Sin dicha planilla el Fondo <u>no</u> puede funcionar. Decidir que un patrono, que no rinde su planilla, esto es, que incumple con esta obligación legal, queda asegurado meramente por razón de que el Fondo prepara una planilla "de oficio", determina una prima a base de la información del año anterior, la cual prima paga el patrono, <u>sería propiciar la destrucción del sistema</u>; ello por razón de que el patrono <u>no</u> tendría incentivo o motivación alguna para rendir la nueva planilla y dicha situación, técnicamente, podría repetirse año tras año, lo cual nos llevaría a un absurdo.

Distinta sería la situación del patrono que, no obstante no haber rendido su planilla en tiempo, no sólo paga la prima determinada a base de una planilla "de oficio" preparada por el Fondo sino que acompaña con dicho pago la planilla que debió haber rendido. En esta situación, cualquier accidente que sufra uno de sus empleados, con posterioridad a la fecha del pago y del rendimiento de la planilla, estaría cubierto por el seguro patronal expedido por la Corporación del Fondo del Seguro del Estado. Ello por la sencilla razón de que en esa situación el patrono habría cumplido con todos los requisitos que la ley exige y estaría poniendo al Fondo en condiciones para calcular la prima final a pagar correspondiente a ese año.

Por las razones antes expresadas, somos del criterio que procede la revocación de la resolución emitida por la

Comisión Industrial de Puerto Rico de fecha 11 de enero de 1996; devolviéndose el caso al foro administrativo para procedimientos ulteriores consistentes con lo aquí resuelto. Se dictará Sentencia de conformidad.


                        FRANCISCO REBOLLO LÓPEZ
                            Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Manuel López Pons

    Patrono-Apelado

      v.                          AA-96-12        APELACIÓN

Corporación del Fondo del
Seguro del Estado

    Asegurador-Apelante


SENTENCIA


San Juan, Puerto Rico a 16 de octubre de 1998


    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la resolución emitida en el presente caso por la Comisión Industrial de Puerto Rico, de fecha 11 de enero de 1996, y se devuelve el caso al foro administrativo para procedimientos ulteriores consistentes con lo aquí resuelto.

    Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal. La Juez Asociada señora Naveira de Rodón disiente sin opinión escrita. El Juez Asociado señor Hernández Denton no interviene. El Juez Asociado señor Fuster Berlingeri no intervino.


                      Isabel Llompart Zeno
                   Secretaria del Tribunal Supremo