Nieves Diary Farm, peticionario, *v.* Corporación del Fondo del Seguro del Estado et als., recurridos.

*Número:* CC-2002-168          *Resuelto:* 24 de septiembre de 2004

78

*José J. Santiago Meléndez* y *Carlos A. Padilla Vélez*, abogados de la parte peticionaria; *Ana Pérez Nieves*, abogada de la parte recurrida; *María Arroyo Villamil*, abogada del obrero lesionado.

PER CURIAM: El obrero Enrique Morales Calo alegadamente sufrió un accidente el 7 de junio de 1988 mientras realizaba labores para su patrono, el aquí peticionario, Nieves Dairy Farm (Nieves Dairy). El 8 de agosto de 1988 el Fondo del Seguro del Estado (Fondo) declaró a Nieves Dairy "patrono no asegurado" para ese periodo. Basó su determinación en que Nieves Dairy no había pagado la totalidad de las primas correspondientes al segundo semestre del año fiscal 1987–1988, adeudando la cantidad de $75.80 al momento de expirar el término para su pago. Nieves Dairy no apeló de esta decisión ante la Comisión Industrial.

Casi un año después, el 2 de agosto de 1990, el Fondo expidió una factura al cobro reclamándole a Nieves Dairy la cantidad de $2,031.25 para cubrir la compensación por incapacidad y los gastos médicos de Morales Calo. El 22 de

agosto de 1990 Nieves Dairy acudió a la Comisión Industrial e invocó la jurisdicción original de esa agencia, al amparo del Art. 13 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo (Ley), 11 L.P.R.A. sec. 16.([1]) Planteó, entre otras cosas, que el Fondo nunca le notificó su decisión de declararlo "patrono no asegurado" y que a la fecha del accidente estaba al día en el pago de las primas. Posteriormente, solicitó a la Comisión Industrial que lo declarara "patrono asegurado" mediante una resolución sumaria, y que reconociera que la deficiencia en las primas correspondientes al año fiscal 1987–1988 fue pagada mediante compensación con un crédito que tenía a su favor, por concepto de primas pagadas en exceso al Fondo durante los años fiscales 1984–1985 y 1985–1986. Dicho crédito ascendía a $3,206.08.

Pendiente aún la solicitud de "resolución sumaria", Nieves Dairy solicitó a la Comisión Industrial que paralizara los procedimientos mientras este Tribunal resolvía una controversia idéntica en el caso *Luis Morales Calo y Modesto Morales Calo v. Nieves Dairy Farm, Inc.*, CE-90-892, Apéndice, pág. 127. El 10 de octubre de 1991 la Comisión Industrial ordenó a las partes presentar unos memorandos de derecho sobre la posibilidad de jurisdicción simultánea entre el Tribunal Supremo y la Comisión Industrial. No consta en autos que hubiese emitido alguna resolución posterior al respecto.

Sin embargo, más de seis años después, el 10 de marzo de 1998, Nieves Dairy solicitó a la Comisión Industrial que tomara conocimiento oficial de la sentencia dictada por este Tribunal en el caso *Luis Morales Calo y Modesto Morales Calo v. Nieves Dairy Farm, Inc.*, supra, notificada el 3 de

---

([1]) La Ley Núm. 63 de 1 de julio de 1996 (11 L.P.R.A. sec. 1 *et seq.*), renumeró los artículos de la Ley del Sistema de Compensaciones por Accidentes del Trabajo. Las partes, la Comisión Industrial y el Tribunal de Circuito de Apelaciones utilizan la numeración original. Para evitar confusión, utilizaremos la numeración vigente, advirtiendo, sin embargo, que en virtud de la Ley Núm. 63, *supra*, el Art. 10 se convirtió en el Art. 9, y el Art. 15 en el Art. 13 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo.

marzo de ese año. En dicha sentencia, resolvimos que Nieves Dairy era patrono asegurado para el segundo semestre del año fiscal 1988–1989, en virtud de compensación de primas al descubierto por primas pagadas en exceso.

Apoyado en esa decisión, Nieves Dairy solicitó a la Comisión Industrial que revocara la resolución emitida por el Fondo el 8 de agosto de 1989 que lo declaró "patrono no asegurado" para el segundo semestre 1987–1988. La Comisión Industrial así lo hizo, mediante resolución notificada el 29 de agosto de 2000. Determinó que a la fecha del accidente Nieves Dairy mantenía en vigor su póliza en el Fondo, en virtud de la compensación de los créditos por pagos en exceso, por lo cual era un patrono asegurado.

El Fondo solicitó una reconsideración. Argumentó que la Comisión Industrial no tenía jurisdicción para alterar la determinación del Fondo sobre *status* patronal, porque Nieves Dairy no había apelado dentro de los 30 días siguientes a dicha determinación, según dispone el Art. 9 de la Ley, 11 L.P.R.A. sec. 11. La Comisión Industrial entonces acogió la posición del Fondo en la resolución de 13 de diciembre de 2000 y dejó sin efecto su dictamen anterior. Se declaró sin jurisdicción para revisar la decisión del Fondo en cuanto a *status* patronal y dejó pendiente para dilucidar en el futuro la responsabilidad por el accidente y la factura de cobro. La solicitud de reconsideración presentada por Nieves Dairy fue denegada.

Ante el entonces Tribunal de Circuito de Apelaciones, Nieves Dairy solicitó la revisión de este dictamen. Basándose en su interpretación de la jurisprudencia prevaleciente al 25 de agosto de 1989, cuando presentó su petición original, sostuvo que la Comisión Industrial podía resolver controversias sobre *status* patronal, cuando el patrono no asegurado niega responsabilidad por el accidente al amparo del Art. 13 de la Ley, *supra*. Según alegó ante el foro apelativo intermedio, el recurso de apelación ante la Comisión Industrial que provee el Art. 9 de la Ley, *supra,* no era el único

modo a su alcance para lograr la revocación de la determinación del Fondo sobre su condición de "patrono no asegurado". Apoyó su interpretación en la opinión de este Tribunal en *Declet v. Comisión Industrial*, 62 D.P.R. 903 (1944).

Según Nieves Dairy, fue nuestra decisión en *Santiago Mitchell v. F.S.E.*, 141 D.P.R. 388 (1996), la que alteró el estado de derecho alegadamente establecido en *Declet v. Comisión Industrial*, supra, al comentarse, mediante una nota al calce, que la determinación del Fondo sobre *status* patronal debe ser apelada a la Comisión Industrial siguiendo el procedimiento pautado por el citado Art. 9 de la Ley, aun cuando el patrono haya negado responsabilidad por el accidente. Sin embargo, como el presente caso surge a partir de unos hechos anteriores a nuestra decisión en *Santiago Mitchell v. F.S.E.*, supra, Nieves Dairy planteó que no se le debía aplicar la "nueva" doctrina.

El Tribunal de Apelaciones denegó la expedición del auto de revisión. Resolvió que el procedimiento disponible al patrono para revisar una determinación del Fondo que lo declaró "patrono no asegurado" es el que está estatuido en el Art. 9 de la Ley, *supra*. Éste establece un término de carácter jurisdiccional de 30 días para acudir ante la Comisión Industrial. Resolvió asimismo que el procedimiento dispuesto por el Art. 13 de la Ley, *supra*, para cuando un patrono no asegurado niega responsabilidad por el accidente, no otorga jurisdicción original a la Comisión Industrial para ventilar controversias sobre *status* patronal. Específicamente, el foro apelativo rechazó la aplicación de nuestro dictamen en el caso *Declet v. Comisión Industrial*, supra, a los hechos del presente caso, en tanto y en cuanto aquél realmente se refiere a la facultad de la Comisión Industrial para determinar, no si el patrono está asegurado, sino si es, en efecto, patrono del obrero lesionado.

Nieves Dairy presentó una solicitud de *certiorari* el 1 de marzo de 2002, luego de lo cual ordenamos al Fondo que mostrara causa por la cual no debíamos expedir el auto

solicitado. Con el beneficio de la comparecencia de las partes, pasamos a resolver.

## I

Ante este Tribunal, Nieves Dairy alega que el Tribunal de Apelaciones erró "al negarse a aplicar la figura de compensación, y en vista de los créditos existentes a favor del patrono ante el Fondo del Seguro del Estado, declararlo patrono asegurado", y

> ... al concluir que la Comisión Industrial carecía de jurisdicción original para entender en la controversia presentada por Nieves Dairy, tras advenir en conocimiento de que el Fondo lo había declarado patrono no asegurado y haber negado responsabilidad por el accidente. Petición de *certiorari*, pág. 11.

Resulta evidente de los hechos que hemos relatado que este caso nos requiere resolver, como cuestión de umbral, si un patrono que no cuestiona ante la Comisión Industrial la determinación del Fondo del Seguro del Estado que lo declaró "patrono no asegurado" puede hacerlo luego durante el juicio *de novo* sobre responsabilidad por el accidente, incoado ante la Comisión Industrial al amparo del Art. 13 de la Ley, *supra*.

Sólo si resolvemos en la afirmativa nos correspondería determinar si la deuda por razón de primas no efectuadas fue extinguida por compensación con el crédito que el peticionario Nieves Dairy Farm tenía a su favor ante el Fondo por primas pagadas en exceso en años anteriores, convirtiéndolo en "patrono asegurado" a la fecha del accidente laboral que da inicio a este caso.

## II

La política pública en la que se basa la regulación de las relaciones obrero-patronales cuando sucede un acci-

dente del trabajo se encuentra en el Art. 1(a) de la Ley, 11 L.P.R.A. sec. 1a. Según esta disposición,

> [l]a Constitución del Estado Libre Asociado de Puerto Rico en su Carta de Derechos, Art. II, Sec. 16, prec. al Título 1, reconoce el derecho de todo trabajador de estar protegido contra riesgos a su salud en su trabajo o empleo …. Por tal razón, la Asamblea Legislativa reconoce el principio de que el riesgo de sufrir accidentes del trabajo es uno de tipo fundamental que necesariamente requiere acción gubernamental. [Por esta acción gubernamental y social l]os trabajadores ceden en cierta medida su derecho a demandar a su patrono a cambio de un beneficio que puede eventualmente resultar menor, pero que es uno seguro, inmediato y cierto. Para que el contrato social resulte favorable a los mejores intereses del trabajador, es el propósito y la política de la Asamblea Legislativa que se brinde a los empleados dentro del Sistema la mejor y más amplia protección contra los riesgos del empleo. Para lograr la decidida colaboración de los patronos en la prestación de esta protección máxima dentro del Sistema, es necesario se reduzcan a un mínimo los pleitos costosos fuera de éste, en reconocimiento al principio que sirve de base al contrato de que los beneficios que provee internamente el Sistema constituyen el sustituto económico del remedio legal.

Es dentro de este marco de contrato social que se establece un sistema compulsorio de aportación patronal a un fondo estatal de seguro que tiene el fin de compensar a los empleados que sufran lesiones, se inutilicen o mueran como consecuencia de accidentes ocurridos en el curso de sus labores. *Martínez v. Bristol Myers, Inc.*, 147 D.P.R. 383 (1999).

Con ese fin el Art. 16 de la Ley, 11 L.P.R.A. sec. 19, dispone lo siguiente:

> Todo patrono de los comprendidos dentro de las disposiciones de este capítulo estará obligado a asegurar a sus obreros o empleados en el Fondo del Seguro del Estado la compensación que éstos deban recibir por lesiones, enfermedad o muerte ….

A su vez, el Art. 25 de la misma ley, 11 L.P.R.A. sec. 28, establece que:

> Será deber de todo patrono el presentar al Administrador, no más tarde del día 20 de julio de cada año, un estado expresando el número de los trabajadores empleados por dicho patrono, la clase de ocupación o industria de dichos trabajadores y la cantidad total de jornales pagados a tales trabajadores o industrias durante el año económico anterior .... Sobre la suma total de jornales declarados en ese estado será computada la cuota ... a pagar por el patrono ....

■ El patrono que no cumpla con esta obligación dentro del término dispuesto por la Ley será considerado como un patrono no asegurado. *López v. F.S.E.*, 146 D.P.R. 778 (1998). Esta determinación tiene efectos que repercuten tanto en los empleados como en los propios patronos. Por un lado, el Art. 2 de la Ley, 11 L.P.R.A. sec. 2, establece que los obreros y empleados que trabajan para patronos asegurados están protegidos por la Ley y son acreedores a los remedios compensatorios provistos por ésta en caso de sufrir lesiones, inutilizarse o perder la vida por accidentes ocasionados en el curso de su trabajo. Por otro lado, la Ley otorga al patrono asegurado inmunidad frente a acciones civiles de daños y perjuicios que pudieran presentar en su contra los empleados lesionados, independientemente de que haya mediado negligencia patronal. Es decir, la Ley priva de esas causas de acción a los empleados cuando el patrono ha cumplido con su obligación legal de asegurar a sus trabajadores ante el Fondo. *Martínez v. Bristol Myers, Inc.*, supra.

■ En sentido contrario, la Ley dispone que el patrono no asegurado, es decir, aquel que incumple el deber legal de asegurar a sus trabajadores, no gozará de inmunidad frente a las acciones en daños y perjuicios que sus empleados presenten en su contra. Así se desprende del Art. 18 de la Ley, 11 L.P.R.A. sec. 21, que dispone como sigue:

> Cuando el patrono asegure sus obreros y empleados de acuerdo con el presente capítulo, el derecho aquí establecido para obtener compensación será el único remedio en contra

del patrono, ... pero en en el caso de accidentes, enfermedades o muerte de los obreros o empleados no sujetos a compensación de acuerdo con este capítulo, la responsabilidad del patrono es y continuará siendo la misma que si no existiere el presente capítulo.

■ A su vez, el Art. 13 de la Ley, *supra*, provee que cuando el patrono no asegurado niega responsabilidad por el accidente,

... cualquier obrero o empleado perjudicado o sus beneficiarios pueden proceder contra tal patrono radicando una petición para compensación ante la Comisión Industrial y, además, pueden ejercitar una acción contra el patrono por daños y perjuicios, lo mismo que si este capítulo no fuera aplicable.

■ Ahora bien, el Art. 13, *supra*, también dispone que cuando el patrono declarado "no asegurado" por el Fondo no acepte responsabilidad por el accidente, "el caso será elevado por el Administrador a la Comisión Industrial, la que decidirá la controversia". Conforme a lo anterior, hemos resuelto que

... la jurisdicción original para adjudicar la responsabilidad por accidentes en casos de patrono no asegurado, en el proceso administrativo, recae *exclusivamente* en la Comisión Industrial. En estos casos, las partes son el patrono y el obrero, limitándose el Fondo, una vez negada la responsabilidad, a referir el caso a la Comisión para adjudicación en primera instancia. *Santiago Mitchell v. F.S.E.*, supra, págs. 394–395.

■ Por otro lado, la Ley específicamente concede al Fondo la jurisdicción *original* para determinar *si un patrono está asegurado*, o lo que es lo mismo, para determinar el *status* patronal. Eventualmente, si el patrono no está conforme con la determinación del Fondo, puede acudir en apelación ante la Comisión Industrial. A esos efectos, el Art. 9 de la Ley, *supra*, se expresa en los términos siguientes:

Si el obrero o empleado, o sus beneficiarios, no estuvieran conformes con la decisión dictada por el Administrador de la Corporación del Fondo del Seguro del Estado con relación a su caso, podrán apelar ante la Comisión Industrial dentro de un término de treinta (30) días después de haber sido notificados con copia de la decisión del Administrador y el caso se señalará para ser oído por un Comisionado. En los casos de patronos no asegurados tanto el obrero como el patrono podrá acudir a la Comisión Industrial una vez declarado no asegurado el patrono por el Administrador, *teniendo el patrono un término de 30 días para apelar de la decisión del Administrador declarándolo no asegurado y el caso podrá ser visto por un Comisionado de la Comisión Industrial.* (Énfasis suplido.)

■ En más de una ocasión hemos aludido a la naturaleza jurisdiccional de este término y a la naturaleza exclusiva del proceso de apelación ante la Comisión para solicitar la revisión de una determinación del Fondo sobre *status* patronal. Así, en *Franco v. J. Pérez & Cía., Inc. y F.S.E.*, 126 D.P.R. 349 (1990), reconocimos, mediante sentencia, que el término dispuesto por el Art. 9, *supra*, es jurisdiccional. En un voto particular y de conformidad, el Juez Asociado Señor Alonso Alonso puntualizó lo siguiente:

El carácter jurisdiccional de este término surge del lenguaje utilizado por el legislador en el estatuto. La disposición establece que tiene "el patrono un término de treinta (30) días para apelar ...". Ante un lenguaje tan claro no puede interpretarse de otra forma que no sea la de un deber afirmativo cuyo incumplimiento extingue el derecho. *Franco v. J. Pérez & Cía, Inc. y F.S.E.*, supra, pág. 361.

■ En *Santiago Mitchell v. F.S.E.*, supra, distinguimos entre los procedimientos establecidos en los Arts. 9 y 13 de la Ley, *supra*. Según expresamos allí,

[n]o hay duda de que existe relación entre la controversia sobre *status* patronal y la de responsabilidad por un accidente. El que el patrono pueda cuestionar su responsabilidad por el accidente depende de que se le haya declarado no asegurado. Al contrario, el patrono asegurado, estando cobijado por la inmunidad que le reconoce la Ley, no tiene capacidad jurídica para cuestionar ante la Comisión Industrial su responsabili-

dad por el accidente. *Alonso García v. Comisión Industrial*, 103 D.P.R. 881 (1975).

No obstante la relación antes explicada, la Ley claramente diferencia ambas controversias. En cuanto a la de *status* patronal, el Fondo tiene jurisdicción original para determinar si un patrono está asegurado. Si el patrono no está conforme con la determinación del Fondo, puede acudir en apelación ante la Comisión Industrial, según el procedimiento establecido en el Art. 10 de la Ley, 11 L.P.R.A. sec. 11. En el procedimiento apelativo ante la Comisión Industrial, las partes son el patrono y el Fondo. Al contrario, la controversia sobre responsabilidad por un accidente de un patrono no asegurado es resuelta, en primera instancia, por la Comisión Industrial, según lo dispuesto por el Art. 15 (11 L.P.R.A. sec. 16) siendo inoficiosa cualquier determinación que haga el Fondo al respecto y las partes son el obrero lesionado y el patrono. Ambos procedimientos se adjudican por separado, resolviéndose primeramente, si es necesario, la controversia sobre el *status* patronal y luego, si también es necesario, la responsabilidad por el accidente.

Las claras diferencias que la Ley establece entre ambas controversias nos impiden que, por fíat judicial, apliquemos por analogía el esquema adjudicativo de una a la otra. *Santiago Mitchell v. F.S.E.*, supra, pág. 396 esc. 3.

Finalmente, en *Kelly Temporary Services v. F.S.E.*, 142 D.P.R. 290 (1997), al examinar si las gestiones de un patrono ante el Fondo constituían la moción de reconsideración que podía interrumpir el término para recurrir ante la Comisión Industrial, este Tribunal reiteró que el término dispuesto en el Art. 9, *supra*, para apelar de la determinación del Fondo es jurisdiccional. Dijimos entonces lo siguiente: "Por lo tanto, una vez comienza dicho término a decursar y finaliza, sin que se haya presentado oportunamente alguna moción interruptora, se extingue el derecho a apelar y la facultad del organismo revisor para intervenir." Íd., pág. 299.

Además, en ese mismo caso abordamos el alcance de la jurisdicción original de la Comisión bajo el Art. 13 de la Ley y las alternativas que tiene el patrono que es

declarado "no asegurado" por el Fondo. Hicimos entonces la explicación siguiente:

> Es correcta la determinación de la Comisión en cuanto a que la jurisdicción original provista en dicho artículo se circunscribe únicamente a la responsabilidad por el accidente, de lo cual este caso no trata. Del antes citado art. 10 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 11, surge claramente que es el Fondo del Seguro del Estado (en adelante Fondo) el que determina en primera instancia el *status* patronal, después de lo cual el patrono puede acudir en apelación a la Comisión, quien podrá entonces revisar la decisión del Fondo. *Kelly Temporary Services v. F.S.E.*, supra, pág. 300 esc. 3.

> . . . . . . . . .

> Surge claramente de lo antes citado que cuando un patrono es declarado no asegurado por el Fondo, aquél tiene reglamentariamente dos opciones inmediatas: someter evidencia adicional al Fondo para que éste reconsidere y revoque su decisión previa, o puede acudir directamente a la Comisión para que ésta revise la decisión del Fondo. (Énfasis suprimido.) Íd., pág. 301 esc. 5.

Nieves Dairy aduce que los pronunciamientos en *Santiago Mitchell v. F.S.E.*, supra, establecieron por primera vez que el remedio provisto por el Art. 9 de la Ley, *supra*, era el mecanismo exclusivo para que la Comisión Industrial adquiriera jurisdicción para revisar las determinaciones del Fondo sobre *status* patronal. Alega que su efecto debe ser prospectivo, pues hasta ese momento regía un estado de derecho diferente, alegadamente establecido en *Declet v. Comisión Industrial*, supra. No tiene razón.

La controversia que resolvimos en *Declet v. Comisión Industrial*, supra, no guarda relación con la que nos ocupa en el presente caso. Allí el patrono no asegurado alegó que no era patrono del obrero accidentado. No cuestionó la determinación de *status* patronal, sino su condición de patrono frente al obrero reclamante. No erró el foro apelativo al aclarar esta distinción. Por otra parte, ni nuestra decisión en *Kelly Temporary Services v. F.S.E.*, supra, ni la explicación anterior en *Santiago Mitchell v. F.S.E.*, supra,

cambiaron la situación normativa, sino que expusieron el estado de derecho existente.

Por último, Nieves Dairy sostuvo ante la Comisión Industrial y alegó en su petición de *certiorari* que nunca recibió notificación de la decisión del Fondo que lo declaró "patrono no asegurado". Adujo que el único documento que recibió fue la factura al cobro emitida por el Fondo el 2 de agosto de 1990.

Sin embargo, en su escrito para mostrar causa el Fondo indica que la decisión fue notificada a Nieves Dairy por correo certificado el 8 de agosto de 1989 y que se sometió ante la Comisión la certificación del Secretario del Fondo a esos efectos, así como la tarjeta de acuse de recibo del Correo de Estados Unidos. Incluyó copia de todo lo anterior. Según hemos constatado, el acuse de recibo evidencia que la notificación se recibió el 15 de agosto de 1989 por Paquita A. de Nieves quien, según la resolución de la Comisión de 11 de septiembre de 1991, era una funcionaria de la corporación Nieves Dairy.

Lo anterior nos lleva a concluir que Nieves Dairy fue notificado oportunamente de la determinación del Fondo que lo declaró "patrono no asegurado", y optó por no solicitar la reconsideración ante el Fondo ni la revisión ante la Comisión Industrial hasta que recibió la factura al cobro por el tratamiento brindado al obrero lesionado. Transcurrido casi un año desde la resolución del Fondo y su notificación, intenta impugnar la determinación del Fondo invocando la jurisdicción original de la Comisión Industrial, dado que el transcurso del tiempo no le permitía invocar la jurisdicción apelativa de esa agencia.

Sin embargo, según hemos explicado, al no acudir dentro del término dispuesto para apelar, la Comisión perdió jurisdicción para entender en la controversia sobre el *status* patronal de Nieves Dairy, es decir, sobre si éste era o no un patrono asegurado. De esa forma, la inacción del peticionario también nos privó de jurisdicción para ex-

presarnos en torno al segundo error planteado por el peticionario.([2])

Por los fundamentos expuestos, *resolvemos que no erró el Tribunal de Apelaciones al denegar el recurso de revisión en este caso. Por consiguiente, se expide el auto de "certiorari" para confirmar la resolución recurrida.*

*Se dictará sentencia de conformidad.*

---

([2]) Según expusimos antes, Nieves Dairy adujo en su segundo señalamiento de error que la deuda por razón de primas no efectuadas se extinguió por compensación con el crédito que tenía a su favor por las primas pagadas en exceso en años anteriores. En *Luis Morales Calo y Modesto Morales Calo v. Nieves Dairy Farm, Inc.*, CE-90-892, Apéndice, pág. 135, resolvimos esta controversia en la afirmativa. Señalamos allí que la compensación no burlaba la obligación del pago de primas, ya que: "en primer lugar, la compensación se da *ipso jure* ... aún sin que los interesados tengan conocimiento de ello; y en segundo lugar, ello no violenta la política pública que inspira la Ley de Compensación por Accidentes del Trabajo." Por otra parte, la obligación de reembolsar o acreditar los pagos en exceso opera como mandato *ex lege*, en virtud del Art. 24 de la Ley, que entre otras cosas establece que: "... si la nómina para el año durante el cual estuvo vigente el seguro fuera menor que la del año económico para el cual fueron tasadas, impuestas y recaudadas las cuotas, el Administrador del Fondo del Seguro del Estado *reembolsará o acreditará*, sin intereses o descuentos, ... la proporción de las cuotas correspondiente a la diferencia entre la nómina actual para el año durante el cual estuvo vigente el seguro y el año para el cual fueron tasadas, impuestas y recaudadas dichas cuotas, siempre y cuando que el Administrador pueda comprobar a su entera satisfacción que los jornales, sueldos y otras remuneraciones declaradas por el patrono en el estado o informe que más adelante se provee, han sido correctamente consignados." 11 L.P.R.A. sec. 27.