ALFREDO GONZÁLEZ DÍAZ, demandante y recurrente, *v.* CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO, demandado y recurrido.

*Número:* AT-95-47          *Resuelto:* 6 de marzo de 1996

*Oscar Amador Ramírez*, abogado de la parte recurrente; *Antonio Vidal Santiago*, abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

Nos toca resolver, por primera vez, si un patrono que pagó la prima estimada que le fue notificada preliminarmente por el Administrador de la Corporación del Fondo del Seguro del Estado debe considerarse como un patrono asegurado respecto del accidente en el trabajo de un em-

pleado suyo, ocurrido después de dicho pago, pero antes de que el Administrador le hubiese notificado el balance adeudado en la prima referida, el cual se pagó tardíamente.

## I

El recurrente, Alfredo González Díaz, opera un negocio propio bajo el nombre de Gomera Govi Incorporado; emplea a varios trabajadores, y resulta ser un patrono según los términos de la Ley de Compensaciones por Accidentes del Trabajo. Como tal, González Díaz sometía y pagaba las primas del seguro gubernamental contra accidentes ocupacionales de la Corporación del Fondo del Seguro del Estado (en adelante el Fondo).

El 1ro de junio de 1991 el Administrador del Fondo le remitió a González Díaz los formularios correspondientes a la declaración de nómina para 1990–1991. En éstos se le notificaba una prima estimada para 1991–1992 de $5,714.70. A fin de estar cubierto por la póliza del Fondo, el patrono debía remitir dicha declaración junto con el pago correspondiente en o antes de 20 de julio de 1991.

El 13 de septiembre de 1991, esto es, con un atraso aproximado de dos meses, González Díaz envió al Fondo su Declaración de Nómina. La acompañó con un cheque por la cantidad de $2,857.35, que era el 50% de la prima que le fue notificada para 1991–1992.

El 31 de octubre de 1991, ya pagada la parte correspondiente de la prima estimada, uno de los empleados de González Díaz, Eduardo J. Medina Coll, sufrió un accidente del trabajo.

Con posterioridad a dicho accidente, el 8 de noviembre de 1991, el Administrador del Fondo le envió una notificación a González Díaz, mediante la cual le informaba el monto de la prima estimada para el segundo semestre de 1991–1992, y, además, que adeudaba $1,503.96, tanto por la liquidación de la prima correspondiente a 1990–1991

como por lo que faltaba de la prima del primer semestre de 1991–1992. De acuerdo con la notificación, el pago debía efectuarse en o antes de 9 de diciembre de 1991. En la propia notificación, el Fondo le advirtió a González Díaz que la falta de pago en dicho término acarrearía la suspensión de la efectividad de su póliza.

Así las cosas, el 13 de marzo de 1992, González Díaz remitió un cheque por $1,503.96, la cantidad adeudada.

El 10 de agosto de 1993, por el fundamento de que el pago por la cantidad adeudada en cuestión no se había realizado dentro del término prescrito, el Administrador del Fondo declaró a González Díaz patrono no asegurado en relación con el accidente ocurrido el 31 de octubre de 1991.

Inconforme con dicha determinación, González Díaz apeló ante la Comisión Industrial (en adelante la Comisión).

El 1ro de septiembre de 1994, luego de celebrar una vista pública, la Comisión declaró a González Díaz patrono no asegurado.

Ante la presentación de una oportuna solicitud de reconsideración, por parte de González, el 15 de diciembre de 1994 la Comisión confirmó su determinación.

El 30 de diciembre de 1994 González Díaz acudió mediante auto de revisión ante el Tribunal Superior, Sala de San Juan. Alegó, en síntesis, que la Comisión había errado al establecer que el seguro gubernamental comenzaba a regir únicamente luego de que el Fondo recibiera el pago adicional del importe de la póliza. Adujo, además, que el pago tardío de $1,503.96 surgió por un error cometido por el Fondo, ya que alegadamente había sido notificado de dicho importe en marzo de 1992 y no en diciembre de 1991. Conforme con las disposiciones del Art. 9.004 de la Ley de la Judicatura de Puerto Rico de 1994 (4 L.P.R.A. sec. 23f), y la Orden Administrativa Núm. XII del Juez Presidente del

Tribunal Supremo de 23 de enero de 1995, el caso de autos nos fue remitido.

El 17 de noviembre de 1995 concedimos a la parte recurrida un término de treinta (30) días para mostrar causa por la cual no debíamos expedir el auto de revisión solicitado y revocar la resolución de la Comisión.

Con el beneficio de la comparecencia de la parte recurrida, resolvemos según lo intimado.

## II

■ Las normas que aplican al caso ante nos son claras y sencillas. Surgen de lo dispuesto en el Art. 27 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 28. Dicho artículo, en lo pertinente, establece que:

> El seguro de cada patrono por el Estado *comenzará a regir inmediatamente después de que haya sido archivada en las oficinas del Administrador del Fondo del Estado su nómina o estado acompañado del importe de la cuota que corresponda al tanto por ciento de los jornales declarados en dicho estado, de acuerdo con los tipos fijados por el Administrador*; Disponiéndose, que cualquier accidente que ocurra antes de verificarse el pago será considerado como un caso de patrono no asegurado a menos que el patrono verifique el pago dentro del término fijado por el Administrador del Fondo del Estado, en los cuales casos el seguro empezará a regir desde la fecha en que el patrono archivó la nómina o estado, en la oficina del Administrador. (Énfasis suplido.)

■ Como puede observarse, todo patrono que interese gozar de los beneficios que ofrece el seguro gubernamental por accidentes ocupacionales del Fondo debe rendir en la Oficina del Administrador del Fondo su Declaración de Nómina, acompañada del importe correspondiente.

■ La efectividad de la póliza empieza a regir inmediatamente después de haberse efectuado dicho pago. *Montaner v. Comisión Industrial*, 59 D.P.R. 396 (1942). El Admi-

nistrador del Fondo está impedido de darle efectividad a una póliza cuando el patrono no ha acreditado la realización de su pago. La verificación del pago, aunque éste sea tardío, protege a dicho patrono contra los accidentes ocurridos con posterioridad a éste, más no así contra aquellos accidentes acaecidos con anterioridad al pago. *Atlantic Pipe Corp. v. F.S.E.*, 132 D.P.R. 1026 (1993); *P.R. Am. Sugar Refinery v. Comisión Industrial*, 63 D.P.R. 636 (1944); *Central Cambalache, Inc. v. Comisión Industrial*, 63 D.P.R. 375 (1944); *Am. Railroad Co. v. Comisión Industrial*, 61 D.P.R. 314 (1943).

## III

■ Con arreglo a lo reseñado antes, se desprende con meridiana claridad que el patrono en el caso de autos, al momento del accidente, esto es, en octubre de 1991, se encontraba cobijado por la cubierta del seguro gubernamental. A esa fecha, el patrono había sometido su nómina y había pagado ya todas las primas que le habían sido requeridas por el Fondo antes del accidente. Incluso, a la fecha del accidente tanto el patrono como el Fondo entendían que las primas notificadas para 1990–1991 y para el primer semestre de 1991–1992 habían sido pagadas en su totalidad. La interpelación realizada por el Fondo luego del accidente, en la que requería el pago de una cuota adicional, ciertamente podía dar fundamento para suspender la protección de la póliza, pero *sólo a partir de la fecha de su interpelación por el Fondo, no con anterioridad a ésta.* Extender la suspensión de la póliza para cubrir, incluso, el momento del accidente, contraviene abiertamente los preceptos del Art. 27 de la Ley de Compensaciones por Accidentes del Trabajo, *supra.* Éstos, como hemos visto, sitúan el comienzo o la terminación de la efectividad de una póliza desde el momento cuando se realiza o se deja de realizar el pago correspondiente.

■ Es menester enfatizar, además, que no tiene buen sentido jurídico pretender privar al patrono de protección por la falta de pago de una cuota adicional que no le había sido impuesta ni notificada al momento de ocurrir el accidente. Por evidentes razones de equidad, e incluso de debido proceso de ley, no puede negársele el beneficio del seguro a un patrono por no haber hecho un pago que él desconocía que debía. Cuando ocurrió el accidente, el patrono en el caso de autos había pagado todo lo que se le había exigido. No tenía noticia oficial alguna, en ese momento, de que debía una cuota adicional. Esa falta de noticia por parte del Fondo le impide a esta entidad pública negarle protección por el accidente en cuestión. *Covell v. State Insurance Fund*, 289 N.Y.S.2d 529 (1968).

■ El Fondo, en su escrito ante nos, descansa en *Montaner v. Comisión Industrial*, supra, para alegar que "el pago de la cantidad total de las primas, que incluye las primas adicionales impuestas legalmente dentro del término establecido por el Administrador, es requisito previo a la efectividad de la póliza de seguro". Pero eso no fue exactamente lo que resolvimos en *Montaner v. Comisión Industrial*, supra. Allí el patrono rindió su Declaración de Nómina el 15 de julio de 1939. El pago de la prima preliminar fijada por el Fondo para el primer semestre de 1939–1940 se hizo *el 24 de octubre de 1939*, aunque la fecha límite para éste era el 10 de septiembre de 1939. El Fondo, con razón, determinó que la póliza comenzaba a regir el 24 de octubre de 1939, por lo que el patrono era uno no asegurado con respecto a un accidente ocurrido el *23 de agosto de 1939*, antes del pago de la prima preliminar que se le había notificado al patrono para ese primer semestre. *No había cuotas adicionales impuestas en este caso*. Es en el contexto de estos hechos concretos que en *Montaner v. Comisión Industrial*, supra, págs. 400–401, resolvimos expresamente que "el pago de las cuotas dentro del término

señalado por el administrador [es] un requisito indispensable para que el administrador pueda darle efectividad a cualquier póliza de seguro".

En el caso de autos, el patrono pagó la prima preliminar *antes* de ocurrir el accidente, contrario a lo que sucedió en *Montaner v. Comisión Industrial*, supra. Conforme con lo allí resuelto, la póliza comenzaba a regir desde la fecha del pago de dicha prima preliminar, por lo que el patrono, en el caso ante nos ahora, estaba protegido al ocurrir el accidente.

■ La eficacia inmediata que debe dársele al pago efectuado por el patrono, aunque sea tardío, la reconocimos expresamente en *Am. Railroad Co. v. Comisión Industrial*, supra. Allí, el 26 de noviembre de 1941, el Administrador del Fondo le notificó al patrono la cantidad final que debía pagar para el *primer semestre* de 1941–1942, que ya estaba en curso. El patrono tenía hasta el 20 de diciembre de 1941 para pagar la prima que le había sido notificada, pero no hizo el pago hasta el 20 de enero de 1942, cuando ya había comenzado a cursar el *segundo semestre* del año en cuestión. El patrono satisfizo el 9 de marzo de 1942 la cantidad correspondiente a ese segundo semestre.

El problema planteado en *Am. Railroad Co. v. Comisión Industrial*, supra, era si el patrono estaba asegurado respecto de un accidente acaecido el 11 de febrero de 1942. El Administrador del Fondo había determinado que el patrono no estaba asegurado desde 1ro de julio de 1941 hasta el 8 de marzo de 1942. Resolvimos, entonces, que si bien el patrono no estuvo asegurado durante el primer semestre del año en cuestión, ni durante los primeros 19 días del segundo semestre —debido a los pagos tardíos efectuados— el patrono debía considerarse asegurado a partir del pago hecho el 20 de enero de 1942. Señalamos allí que la cantidad indebidamente pagada para el primer semestre debía aplicársele a la cuota del segundo semestre, y que

surtía efecto para ese segundo semestre, a partir de la fecha del pago, por lo que el accidente posterior quedaba cubierto por la póliza del Fondo.

En razón de todo lo anterior, concluimos que a la fecha del accidente en cuestión, en el caso de autos el patrono debió ser considerado como patrono asegurado para efectos de la Ley de Compensaciones por Accidentes del Trabajo.

Por los fundamentos antes expuestos, *se expedirá el auto de revisión solicitado y se dictará sentencia para revocar la resolución de la Comisión de 15 de diciembre de 1994, que declaró a Gomera Govi Incorporado patrono no asegurado para fines del accidente de autos, y para declararlo patrono asegurado.*

El Juez Asociado Señor Rebollo López concurrió sin opinión escrita.