En el Tribunal Supremo de Puerto Rico

| Carlos Martínez Rodríguez<br>      Peticionaria<br><br>      V.<br><br>Bristol Myers Barceloneta, Inc. etc.<br>      Recurrida | Certiorari<br><br>99TSPR6 |
| --- | --- |

Número del Caso: CC-97-272

Abogados de la Parte Peticionaria: (Ortiz Toro & Ortiz Brunet)
                                    Lcdo. Arnaldo E. Granados
                                    Lcdo. Glenn Carl James
                                    Lcdo. Jorge Ortiz Brunet
                                    Lcdo. John E. Mudd

Abogado de la Parte Recurrida:     Lcdo. Rafael E. Aguiló Vélez

Abogado de la Parte Interventora:  Lcdo. Chali García Roche

Tribunal de Instancia: Superior de Arecibo

Juez del Tribunal de Primera Instancia: Hon. Edna Abruña Rodríguez

Tribunal de circuito de Apelaciones: Circuito Regional III

Juez Ponente: Hon. Arbona Lago

Fecha: 1/26/1999

Materia: Daños y Perjuicios

    Este documento constituye un documento oficial del
    Tribunal Supremo que está sujeto a los cambios y
    correciones del proceso de compilación y publicación
    oficial de las decisiones del Tribunal. Su
    distribución electrónica se hace como un servicio
    público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos Martínez Rodríguez
y otros

    Demandantes-peticionarios

      v.                          CC-97-272
    CERTIORARI

Bristol Myers Barceloneta,
Inc. y sus Compañías de
Seguros A y B

    Demandados-Recurridos

    OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 26 de enero de 1999

Revisamos, vía certiorari, una sentencia dictada por el Tribunal de Circuito de Apelaciones, Circuito Regional de Arecibo y Utuado, el 18 de abril de 1997. Mediante la misma, se revocó la resolución dictada el 25 de marzo de 1996 por el Tribunal de Primera Instancia, la cual declaraba "no ha lugar" una moción de desestimación por prescripción presentada por la recurrida. Esto es, el tribunal apelativo intermedio ordenó la desestimación, por prescripción, de la demanda en daños y perjuicios instada por los aquí peticionarios contra su patrono indirecto ante el tribunal de instancia.

Nos corresponde resolver en el presente caso en qué fecha comienza a transcurrir el término de prescripción de un año de una acción de daños y perjuicios cuando la misma se insta contra un <u>patrono estatutario no asegurado</u>.

I

En septiembre de 1991, el obrero peticionario, Sr. Carlos R. Martínez Rodríguez, fue contratado como empleado temporal de línea de producción por la compañía de trabajo temporal Top Notch Temporary Services, Inc., en adelante Top Notch. Dicha empresa destinó al Sr. Martínez a laborar en la planta de trabajo de la compañía Bristol Myers Barceloneta, Inc., en adelante Bristol Myers, como empleado de línea de empaque manual.[1] A fines de ese año, se le retiró de la labor originalmente asignada y se le asignó la tarea de operar una máquina "capper", alegadamente, sin haber sido entrenado adecuadamente para ello.

El 9 de enero de 1992, mientras se hallaba operando la máquina que le había sido asignada, el peticionario sufrió

---

[1] Según surge de los autos del caso ante el Tribunal de Primera Instancia, Sala Superior de Arecibo —caso civil núm. CPD 94-0337— el 4 de marzo de 1996 la parte demandante radicó una moción informativa mediante la cual comunicó al tribunal que en una deposición tomada al Sr. Larry Miller, Gerente General de Bristol Myers, éste expuso que no existía contrato <u>escrito</u> alguno entre las dos compañías demandadas, Bristol Myers y Top Notch. Sin embargo, de las alegaciones vertidas por las partes ante los tres foros judiciales que han conocido de este caso, podemos derivar que no existe controversia respecto al hecho de que sí existía una relación contractual entre la compañía de trabajo temporal, Top Notch, y la compañía que requirió sus servicios, Bristol Myers.

un accidente de trabajo. Su mano izquierda quedó atrapada por la cadena rotativa de la máquina de forma que le cercenó varios de sus dedos. Inmediatamente, el obrero fue referido a la Corporación del Fondo del Seguro del Estado, en adelante el Fondo, donde se le brindó el tratamiento que requerían las lesiones que el accidente le había causado. La naturaleza de la lesión hizo necesaria la amputación del remanente de la mano izquierda del peticionario. Después de un tratamiento médico continuado brindado por el Fondo, el peticionario recibió el alta definitiva el 21 de abril de 1994. Tal decisión se le notificó el 10 de junio de 1994, fecha en que, según alega dicho empleado, vino a enterarse de que su patrono indirecto, Bristol Myers, no lo tenía cubierto con una póliza del Fondo del Seguro del Estado.

Por otro lado, con anterioridad a la determinación del Fondo de emitir el alta definitiva al lesionado, el 15 de abril de 1993 dicha agencia había resuelto que el patrono directo del obrero, Top Nocth, era un patrono no asegurado. Dicha compañía realizó tardíamente el pago de la póliza correspondiente al segundo semestre del año 1991-1992 y el accidente objeto del caso de autos ocurrió, precisamente, durante el periodo comprendido entre la fecha de vencimiento del pago y la fecha en que se efectuó el mismo. El 6 de mayo de 1993 se archivó en autos copia de la notificación de esta decisión.

Así las cosas, el 30 de diciembre de 1994, el lesionado, Carlos R. Martínez Rodríguez, su esposa, Sandra

Cruz García y la Sociedad de Gananciales compuesta por ambos radicaron demanda en daños y perjuicios ante el entonces Tribunal Superior de Arecibo contra Top Notch Temporary Services, Inc. --su patrono directo--, Bristol Myers, Inc. --su patrono indirecto-- y sus respectivas compañías aseguradoras. Dicha demanda fue enmendada en varias ocasiones: en primer lugar, el 14 de febrero de 1995 y, más tarde, el día 16 del mismo mes.

El 24 de marzo de 1995 la co-demandada Top Notch, Inc. presentó una "Moción de Desestimación y/o de Sentencia Sumaria" alegando que la demanda en su contra se hallaba prescrita por haberse radicado más de un año después de que el Fondo notificara al lesionado que Top Notch era un patrono no asegurado. El Tribunal de Primera Instancia la declaró "no ha lugar". Contra esa determinación Top Notch acudió en apelación ante el Tribunal de Circuito, el cual, mediante sentencia dictada el 29 de noviembre de 1995, revocó la determinación de instancia y expresó que, efectivamente, la causa de acción del demandante estaba prescrita en cuanto a Top Notch.

En consecuencia, el 8 de marzo de 1996, el demandante presentó ante el Tribunal de Instancia su tercera demanda enmendada para eliminar como co-demandado a la compañía Top Notch y para incorporar como co-demandantes a la Sra. María Rodríguez Zeno, madre del lesionado, y al Sr. Ramón Rodríguez Santiago, padrastro del mismo.

En el ínterin, el 18 de mayo de 1995, Bristol Myers radicó una moción de desestimación alegando que, por ser un patrono estatutario, se hallaba protegido por la inmunidad contra acciones por daños derivados de accidentes laborales que otorga la Ley de Compensaciones por Accidentes de Trabajo. En la alternativa, argumentó que la causa de acción en su contra se hallaba prescrita, al igual que la de Top Notch.

El 25 de marzo de 1996, el Tribunal de Primera Instancia emitió resolución declarando "no ha lugar" la Moción de Desestimación presentada por la co-demandada Bristol Myers. Los fundamentos que sirvieron de base para esta decisión fueron que, dado que el patrono directo del demandante era uno no asegurado y que Bristol Myers tampoco cumplió con su obligación de asegurar al obrero ante el Fondo, ésta última compañía no gozaba de la categoría de patrono estatutario sino que era meramente un tercero responsable del daño. En consecuencia, a base del Artículo 31 de la Ley de Compensaciones por Accidentes del Trabajo[2], concluyó que el término para reclamar contra él por los daños y perjuicios causados comenzó a correr al convertirse en firme la resolución final del caso dictada por el Administrador del Fondo, la cual se emitió el 5 de mayo de 1994 y se notificó el 10 de junio del mismo año. Así pues, resolvió que el término de un año no había transcurrido al

---

[2]     11 L.P.R.A. sec. 32.

momento de la radicación de la demanda, el 20 de diciembre de 1994, y que, por tanto, la acción contra Bristol Myers no se hallaba prescrita.

Inconforme con esta determinación, Bristol Myers presentó recurso de certiorari ante el Tribunal de Circuito de Apelaciones, solicitando la desestimación de la demanda con perjuicio. El 18 de abril de 1997, el Circuito Regional de Arecibo y Utuado dictó sentencia revocando la resolución recurrida y ordenando la desestimación de la demanda. Resolvió que Bristol Myers era un patrono estatutario no asegurado y que el inicio del término prescriptivo de la acción de daños que el obrero lesionado tenía en su contra debía computarse a partir de la fecha en que se notificó al obrero accidentado que su patrono directo, Top Notch, no estaba cubierto por el Fondo.

Por estar en desacuerdo con dicha decisión, el obrero lesionado acudió ante este Tribunal imputándole al Tribunal de Circuito de Apelaciones haber errado al:

"A. ... declarar prescrita la acción de daños y perjuicios del demandante conforme a Vega Lozada vs. J. Pérez y Co., 94 JTS 56, ya que no existía contra BMBI una determinación del FSE que lo declarara patrono no asegurado y/o patrono estatutario no asegurado. Además, el demandante no conocía quién era el autor del daño (o el origen) hasta un mes antes de radicarse la demanda. Es importante recalcar que solamente había una determinación de patrono no asegurado contra Top Notch Temporary Services, Inc.

B. ... revocar la Resolución del Honorable Tribunal Superior y declarar prescrita la acción de daños y perjuicios, ya que dictó sentencia sumaria al existir controversia de hechos.

C. ... desestimar la demanda, ya que le viola el debido proceso de ley al demandante al exigirle que inste la causa de acción antes de que advenga en conocimiento de que BMBI es un patrono estatutario no asegurado.

D. ... aplicarle a los hechos del caso de título de forma retroactiva la doctrina de <u>Vega Lozada</u> vs. <u>J. Pérez y Co.</u>, <u>supra</u>."

Habiendo comparecido ambas partes y presentado sus correspondientes alegatos, nos hallamos en posición de resolver. Procedemos a así hacerlo.

## II

"La Constitución del Estado Libre Asociado de Puerto Rico en su Carta de Derechos, Art. II, Sec. 16, prec. al Título 1, reconoce el derecho de todo trabajador de estar protegido contra riesgos a su salud en su trabajo o empleo.
                              ....

<u>Los trabajadores ceden en cierta medida su derecho a demandar a su patrono a cambio de un beneficio que puede eventualmente resultar menor, pero que es uno seguro, inmediato y cierto</u>. Para que el contrato social resulte favorable a los mejores intereses del trabajador, es el propósito y la política de la Asamblea Legislativa que se brinde a los empleados dentro del Sistema la mejor y más amplia protección contra los riesgos del empleo. Para lograr la decidida colaboración de los patronos en la prestación de esta protección máxima dentro del Sistema, es necesario se reduzcan a un mínimo los pleitos costosos fuera de éste, en reconocimiento al principio que sirve de base al contrato de que <u>los beneficios que provee internamente el Sistema constituyen el sustituto económico del remedio legal</u>." (Énfasis suplido) Artículo 1 (a) de la Ley de Compensaciones por Accidentes del Trabajo.[3]

_____

[3]    Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1 (a).

Las palabras que anteceden constituyen la política pública que sustenta la regulación contenida en la Ley de Compensaciones por Accidentes del Trabajo[4]. Dicha Ley establece un sistema compulsorio de aportación patronal a un fondo estatal de seguro que tiene el fin de compensar a los empleados que sufran lesiones, se inutilicen o mueran como consecuencia de accidentes ocurridos en el curso de sus labores. <u>Ortiz Pérez</u> v. <u>Fondo del Seguro del Estado</u>, Opinión y Sentencia de 31 de octubre de 1994; <u>Montaner</u> v. <u>Comisión Industrial</u>, 59 D.P.R. 396, 399 (1941).

Así, el Artículo 18 de la Ley dispone que "[t]odo patrono de los comprendidos dentro de las disposiciones de este Capítulo estará obligado a asegurar a sus obreros o empleados en el Fondo del Seguro del Estado la compensación que éstos deban recibir por lesiones, enfermedad o muerte ...".[5] En cumplimiento de tal obligación, el Artículo 27 de la misma ley[6] establece que el patrono deberá presentar ante el Fondo del Seguro del Estado, no más tarde del día 20 de julio de cada año, una declaración expresando el número de los trabajadores empleados por dicho patrono, la clase de ocupación de los mismos y la cantidad total de jornales pagados a éstos durante el año económico anterior. Tal declaración deberá ir acompañada del pago de la prima que

---

[4]     Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1 <u>et seq</u>.

[5]     Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 19.

corresponda.  Tanto  la  propia  ley,  como  nuestra
jurisprudencia  interpretativa  disponen  que  aquel  patrono
que  no  cumpla  con  la  obligación  que  acabamos  de  describir
será  considerado  como  un  patrono  no  asegurado.[7]

Los  efectos  de  que  un  patrono  se  considere  o  no
asegurado  repercuten  tanto  en  los  empleados  como  en  los
propios  patronos.  Veamos.

Por  un  lado,  el  Artículo  2  de  la  Ley  de  Compensaciones
por  Accidentes  del  Trabajo[8]  establece  que  todos  los  obreros
y  empleados  que  trabajan  para  patronos  asegurados  y  que
sufran  lesiones,  se  inutilicen  o  pierdan  la  vida  por
accidentes  ocasionados  por  un  acto  o  función  inherente  a  su
trabajo  o  empleo,  que  ocurren  en  el  curso  de  éste  y  como
consecuencia  del  mismo,  están  protegidos  por  la  ley[9]  y,  por

---

[6]    11 L.P.R.A. sec. 28.

[7]    El  Artículo  27  de  la  Ley  de  Compensaciones  por
Accidentes  del  Trabajo  lee,  en  lo  pertinente,  como  sigue:

> "...todo  patrono  que  no  hubiere  presentado  el
> estado  a  que  se  refiere  esta  sección  dentro  del
> término  que  aquí  se  fija,  será  considerado  como  un
> patrono  no  asegurado.
>                        . . . .
> El  seguro  de  cada  patrono  por  el  estado
> comenzará  a  regir  inmediatamente  después  de  que
> haya  sido  archivada  en  las  oficinas  del
> Administrador  del  Fondo  del  Seguro  del  Estado  su
> nómina  o  estado  acompañado  del  importe  de  la  cuota
> que  corresponda ..."  11 L.P.R.A. sec. 28.

Véanse,  en  el  mismo  sentido:  F.S.E.  v.  López  Pons,
Opinión  y  Sentencia  de  16  de  octubre  de  1998;  González  Díaz
v.  F.S.E.,  Opinión  y  Sentencia  de  6  de  marzo  de  1996;
Atlantic  Pipe  Corp.  v.  F.S.E.,  Opinión  y  Sentencia  de  17  de
marzo  de  1993;  Montaner  v.  Comisión  Industrial,  supra.

[8]    11 L.P.R.A. sec. 2.

[9]    Véanse,  en  cuanto  a  los  requisitos  necesarios  para  que
un  accidente  sea  compensable,  los  siguientes  casos:

lo tanto, son acreedores de los remedios compensatorios previstos por la misma[10]. Torres Solís v. A.E.E., Opinión y Sentencia de 7 de junio de 1994; Santiago Hodge v. Parke Davis Co., 126 D.P.R. 1 (1990); Ruiz Díaz v. Vargas Reyes, supra., página 764.

Por otro lado, la ley otorga al patrono asegurado inmunidad frente a acciones civiles de daños y perjuicios que pudieran presentar los empleados lesionados en su contra, independientemente de la negligencia patronal que haya mediado; es decir, la ley priva de esas causas de acción a los empleados cuando el patrono ha cumplido con su obligación legal de asegurar a sus trabajadores ante el Fondo. Torres Solís v. A.E.E., supra.; Admor. F.S.E. v. Flores Hermanos, Cement Products, 107 D.P.R. 789, 792 (1976); Cruz Rodríguez v. A.A.A., 101 D.P.R. 269, 270 (1973); Vda. De Andino v. A.F.F., 93 D.P.R. 170, 181 (1966).

---

Victoria Reyes v. Policía de P.R. y C.F.S.E., Opinión y Sentencia de 23 de diciembre de 1996; Pacheco Pietri v. E.L.A., Opinión y Sentencia de 30 de junio de 1993; Díaz Ortiz v. F.S.E., 126 D.P.R. 32 (1990); Odriozola v. S. Cosmetic Dist. Corp., 116 D.P.R. 485 (1983); Rivera Rivera v. Comisión Industrial, 101 D.P.R. 56 (1973); Vélez v. Comisión Industrial, 91 D.P.R. 686 (1965); Vélez v. Comisión Industrial, 91 D.P.R. 480 (1965); Gallart v. Comisión Industrial, 89 D.P.R. 581 (1963); Cardona v. Comisión Industrial, 53 D.P.R. 197 (1938).

[10] Específicamente los Artículos 3, 3 (a) y 3 (b) de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. secs. 3, 4 y 4 (a) recogen extensamente los diferentes remedios que dicha ley dispone para aquellos empleados que sufran daños relacionados con accidentes de trabajo compensables.

En <u>Santiago Hodge</u> v. <u>Parke Davis Co.</u>, <u>supra</u>, establecimos el objetivo o fundamento del mandato legislativo que instituye un sistema de compensación para los obreros lesionados y que otorga inmunidad contra acciones en daños a los patronos asegurados ante el Fondo del Seguro del Estado. Allí expresamos:

> "Este sistema, 'integrado sobre la base de una responsabilidad objetiva social', *Cortijo Walker* v. *Fuentes Fluviales*, supra, págs. 578-579, fue implantado para eliminar el desamparo en que quedaban los obreros que sufrían accidentes en el trabajo, quienes para poder obtener compensación tenían que demostrar judicialmente la negligencia de su patrono. En el mejor de los casos se producía un remedio monetario tardío; en el peor, ninguno. En el diseño del esquema se comprometió el mayor resarcimiento disponible según las normas generales del derecho civil a cambio de una módica pero segura compensación estatutaria fundamentada en un criterio de dependencia. Íd., pág. 579."

En este contexto debemos hacer referencia a la figura que se ha denominado "<u>patrono estatutario</u>". Un patrono estatutario es aquel que contrata los servicios de otra compañía y, por lo tanto, de los trabajadores de ésta. De este modo, tales obreros tienen un patrono directo o real --que es aquel con quien contrataron-- y un patrono indirecto o estatutario, que es aquel con quien contrató su patrono directo o real. Sobre esta última categoría de patronos la ley dispone que tendrán la obligación de asegurar a los trabajadores de la compañía cuyos servicios contrataron siempre que ésta no lo haya hecho. <u>Colón</u>

Santiago v. Comisión Industrial, 97 D.P.R. 208 (1969).

Así, el Artículo 19[11] de la ley dispone:

> "Todo patrono asegurado al dar cuenta con sus nóminas anuales deberá incluir en tales nóminas los salarios pagados a todos los obreros y empleados que estuvieren trabajando o fuere a emplear bien por ajuste, o ya bajo una persona con quien ajustó el patrono o bajo un contratista o subcontratista independiente empleado o contratado por dicho patrono, y toda cuenta, o impuesto cobrado por el Estado se basará sobre la nómina corriente del patrono, en las cuales deberán estar incluidos los trabajadores antes mencionados; Disponiéndose, que esta disposición no será aplicable a los patronos para quienes se hiciere trabajo por un contratista independiente que estuviere asegurado como patrono de acuerdo con las disposiciones de este Capítulo."

Este Tribunal ha definido el término "patrono estatutario" del siguiente modo:

> "La determinación de si un demandado es o no patrono estatutario depende de las relaciones contractuales entre dicho demandado y el patrono real de los obreros.
>
>                                        . . .
>
> [Patrono estatutario] ha venido a significar dueños de obras y principales a quienes la ley impone la obligación de asegurar a los empleados de los contratistas o subcontratistas que aquéllos contraten para la ejecución de obras y servicios, cuando éstos no los tengan asegurados." (Énfasis suplido). Viuda de Costas v. P.R. Olefins, 107 D.P.R. 782, 785 (1978).

Hemos establecido que el objetivo principal de la obligación legal común de asegurar a los trabajadores que la ley impone al patrono directo y al estatutario es "no sólo evitar la evasión de la ley, sino proteger a los obreros y empleados de subcontratistas irresponsables y no asegurados mediante la imposición de responsabilidad al

---

[11]     11 L.P.R.A. sec. 20.

contratista principal que, al seleccionar al subcontratista, puede exigirle protección adecuada contra accidentes del trabajo". <u>Santiago Hodge</u> v. <u>Parke Davis Co</u>., <u>supra</u>., página 11; <u>Viuda de Costas</u> v. <u>P.R. Olefins</u>, <u>supra</u>.; <u>Colón Santiago</u> v. <u>Comisión Industrial</u>, <u>supra</u>., página 209.

Así, un patrono estatutario gozará de la inmunidad que dispone la Ley de Compensaciones por Accidentes del Trabajo[12] en dos situaciones: (1) si cumple con su obligación de asegurar ante el Fondo a los trabajadores del patrono real que éste no haya asegurado, o (2) si el patrono que él contrató para que le realizara determinados servicios ha asegurado a sus trabajadores, los cuales van a realizar tales servicios para el patrono estatutario.

Ahora bien, en ausencia de un nexo jurídico que relacione al patrono directo del obrero con el causante de la lesión, no estaremos ante la figura de patrono estatutario que acabamos de analizar sino ante un <u>tercero</u> desprovisto de la protección estatutaria contra demandas de obreros lesionados en el trabajo. <u>Torres Solís</u> v. <u>A.E.E</u>., <u>supra</u>; <u>Santiago Hodge</u> v. <u>Parke Davis Co.</u>, <u>supra</u>, página 12; <u>Ruiz Díaz</u> v. <u>Vargas Reyes</u>, <u>supra</u>, página 765; <u>Lugo Sánchez</u> v. <u>A.F.F</u>., 105 D.P.R. 861, 866 (1977). El Artículo 31 de la Ley de Compensaciones por Accidentes del Trabajo[13] establece que en los casos de lesiones producidas bajo circunstancias que hicieren responsables a un tercero, el obrero lesionado

---

[12]    11 L.P.R.A. secs. 1 <u>et seq</u>.
[13]    11 L.P.R.A. sec. 32.

podrá reclamar por daños y perjuicios contra dicho tercero responsable de la lesión, sin que éste se halle protegido por ningún tipo de inmunidad.

La importancia de distinguir los conceptos de "tercero" y de "patrono estatutario" reside precisamente en las diferentes responsabilidades que tienen cada uno ante lesiones derivadas de accidentes de trabajo: mientras el patrono estatutario queda cobijado por la inmunidad que protege al patrono directo asegurado o por su propia inmunidad si cumple con la obligación de asegurar a los trabajadores no asegurados por el patrono directo, el tercero causante del daño será responsable ante demandas judiciales en daños y perjuicios. En ese sentido, en Lugo Sánchez v. A.F.F., supra, página 867, dijimos:

> "El tercero sujeto a demanda por daños y perjuicios a los fines del Art. 31 de la Ley es persona extraña, ajena y separada de la interacción jurídica que relaciona al patrono estatutario (A.F.F.) y al contratista (Zachry) con el Fondo del Seguro del Estado en la obligación legal común de asegurar sus obreros y empleados a tenor de lo dispuesto en la Ley de Compensaciones por Accidentes del Trabajo. Bajo ninguna premisa puede considerarse tercero o extraño causante de daño al patrono a quien la Ley expresamente dispensa de la obligación de asegurar y quien es parte regulada por el esquema de seguro exclusivo compulsorio." (Énfasis suplido).

Una vez establecidas las diferencias entre lo que se considera un patrono estatutario y un tercero, debemos retomar el análisis de las disposiciones legales sobre inmunidad. En ese sentido, la propia Ley de Compensaciones por Accidentes del Trabajo dispone que un patrono no

asegurado, es decir, aquel que no cumple con el deber legal de asegurar a sus trabajadores, no gozará de inmunidad frente a las acciones en daños y perjuicios que sus empleados presenten en su contra. Así se desprende del Artículo 20 de la Ley de Compensaciones por Accidentes del Trabajo[14], que lee como sigue:

"Exclusividad del remedio provisto.

Cuando el patrono asegure sus obreros y empleados de acuerdo con el presente Capítulo, el derecho aquí establecido para obtener compensación será el único remedio en contra del patrono, ... pero en el caso de accidentes, enfermedades o muerte de los obreros o empleados no sujetos a compensación de acuerdo con este Capítulo, la responsabilidad del patrono es y continuará siendo la misma que si no existiere el presente Capítulo." (Énfasis suplido).

En el mismo sentido, el Artículo 15 de la ley[15] dispone:

"Si cualquier patrono de los comprendidos en este Capítulo dejare de asegurar el pago de compensaciones por accidentes del trabajo de acuerdo con el mismo, cualquier obrero o empleado perjudicado o sus beneficiarios pueden proceder contra tal patrono radicando una petición para compensación ante la Comisión Industrial y, además, pueden ejercitar una acción contra el patrono por daños y perjuicios, lo mismo que si este Capítulo no fuera aplicable." (Énfasis suplido).

Así pues, como se desprende de estas disposiciones legales, si cualquier patrono de los comprendidos en la Ley de Compensaciones por Accidentes del Trabajo deja de cumplir con su obligación de asegurar a sus empleados y alguno de éstos sufre un accidente laboral, el obrero

---

[14]    11 L.P.R.A. sec. 21.

lesionado tendrá a su favor dos remedios que coexisten y son independientes: (1) por un lado, podrá radicar una petición de compensación ante la Comisión Industrial, igual que si el patrono estuviera asegurado, y (2) por otro lado, podrá radicar una acción civil judicial por los daños y perjuicios sufridos. Medina v. Santiago del Toro, 110 D.P.R. 139 (1980); Vélez Sánchez v. Comisión Industrial, 107 D.P.R. 797 (1978); Quiñones v. R. Méndez & Hnos., 57 D.P.R. 103 (1940). Op. Sec. Just. Núm. 11 de 1968.

Tal como se desprende de la letra de los Artículos analizados, en los casos en que sea posible ejercitar contra el patrono una acción por daños y perjuicios, ésta tendrá iguales características que las dispuestas por el Código Civil. Esto es, serán de aplicación las disposiciones del Artículo 1802 del Código Civil[16], a los efectos de que el que por acción u omisión cause daño a sus empleados, interviniendo culpa o negligencia, está obligado a reparar el daño causado. Ahora bien, la acción deberá presentarse por parte del obrero en el término de prescripción establecido por el Artículo 1868 del Código Civil, que dispone:

> "Prescriben por el transcurso de un (1) año:
>
> ...
>
> (2) La acción para exigir la responsabilidad civil por ... las obligaciones derivadas de la culpa o negligencia de que se trata en la sec. 5141 de este título desde que lo supo el agraviado".

---

[15] 11 L.P.R.A. sec. 16.

El término de un (1) año de prescripción comenzará a contar en momentos distintos según la calidad en que se encontraba el responsable del daño. Veamos las diferencias.

El Artículo 31 de la Ley de Compensaciones por Accidentes del Trabajo[17] establece:

> "En los casos en que la lesión, enfermedad profesional o la muerte que dan derecho de compensación al obrero, empleado o sus beneficiarios, de acuerdo con este Capítulo, le hubiere provenido bajo circunstancias que hicieren responsables a tercero de tal lesión, enfermedad o muerte, el obrero o empleado lesionado o sus beneficiarios podrán reclamar y obtener daños y perjuicios del tercero responsable de dicha lesión, enfermedad o muerte <u>dentro del año subsiguiente a la fecha en que fuere firme la resolución del caso por el Administrador del Fondo del Seguro del Estado</u> ..."

Así pues, el término de un año para reclamar en daños y perjuicios contra un tercero responsable del accidente comienza a transcurrir desde el momento en que adquiere firmeza la resolución final del caso dictada por el Administrador del Fondo.  Sin embargo, en <u>Vega Lozada</u> v. <u>J. Pérez & Cía, Inc. y otros</u>, Opinión y Sentencia de 11 de abril de 1994, resolvimos que "el término prescriptivo para ejercitar la acción de daños y perjuicios en casos [de patronos no asegurados] comienza a transcurrir <u>desde la fecha en que el Fondo notifique que el patrono no está asegurado</u>."

Hasta este punto hemos expuesto los remedios previstos por el derecho vigente a favor de los obreros lesionados

---

[16]    **31 L.P.R.A. sec. 5141.**

por accidentes del trabajo según el daño haya sido causado por un patrono asegurado, un patrono estatutario, un tercero o un patrono no asegurado.

Siendo la anterior la doctrina existente y vigente, nos corresponde resolver en el presente caso dos controversias de derecho:

(1) Si un patrono indirecto no asegura ante el Fondo a los trabajadores de la compañía contratada, a pesar de que éste tampoco los tenía asegurados, ¿tiene naturaleza de patrono estatutario no asegurado o simplemente es un tercero responsable del daño?;

(2) Una vez resuelta la primera interrogante, ¿en qué momento comienza a transcurrir el término de prescripción de un año de la acción de daños y perjuicios presentada contra un patrono estatutario no asegurado?.

### III

De la exposición de derecho que antecede se desprende la relevancia que tiene la calificación legal que se otorgue al causante del daño a los fines de determinar el remedio que tiene disponible el lesionado. En específico, hemos descrito cómo también adquiere importancia en qué categoría se halla el causante del daño a la hora de establecer el inicio del término prescriptivo de un año que señala el Código Civil para la acción civil por daños y perjuicios.

---

[17] **11 L.P.R.A. sec. 32.**

Como ya hemos señalado, el elemento definidor del patrono estatutario es su relación contractual con el patrono directo del trabajador y la obligación legal que tiene de asegurar a los empleados de su contratista cuando éste no los tenga asegurados ante el Fondo. De ese modo, el patrono estatutario es inmune a las demandas civiles por daños y perjuicios que surjan a base de accidentes laborales siempre que los empleados estén asegurados, ya sea por el patrono directo, ya sea por él mismo cuando aquél no hubiera cumplido con su obligación legal de asegurar. Ahora bien, la interrogante surge respecto a cuál es la consecuencia de que ni uno ni otro cumpla con su obligación legal común de asegurar a los empleados del patrono directo que trabajan para el estatutario.

El peticionario, al igual que el tribunal de instancia, entiende que el efecto es que el patrono indirecto se convierte en un tercero. Sin embargo, tanto el recurrido como el Tribunal de Circuito de Apelaciones entienden que el hecho de que el patrono indirecto incumpla su obligación de asegurar a los trabajadores del patrono directo no asegurado no lo convierte en un tercero, sino simplemente en un patrono estatutario que no goza de la inmunidad que prevé la Ley de Compensaciones por Accidentes del Trabajo por no estar asegurado. Somos del criterio que esta última posición es la correcta. Veamos por qué.

Como hemos reiterado, la figura del patrono estatutario surge sólo si existe una relación contractual

de éste con el patrono real de los trabajadores que están trabajando para él. Mediante esta figura legal se pretende extender la inmunidad que tiene el patrono directo al estatutario a cambio de que éste último asegure a los trabajadores cuando el primero no lo haya hecho. Por lo tanto, el patrono estatutario tiene una relación directa tanto con el patrono real como con sus trabajadores; con el primero, porque media un contrato de servicios entre ellos y con los segundos, porque éstos realizan sus labores en la planta física del patrono estatutario.

Por otro lado, este Tribunal ha definido en reiteradas ocasiones al tercero a que se refiere el Artículo 31 de la ley[18] como una persona <u>extraña</u>, <u>ajena</u> y <u>separada</u> de la interacción jurídica que relaciona al patrono indirecto y al patrono real con el Fondo en la obligación legal común de asegurar sus obreros. Específicamente, hemos resuelto que "<u>[b]ajo ninguna premisa puede considerarse tercero o extraño causante de daño al patrono a quien la Ley expresamente dispensa de la obligación de asegurar y quien es parte regulada por el esquema de seguro exclusivo compulsorio</u>." <u>Lugo Sánchez</u> v. <u>A.F.F</u>., <u>supra</u>., página 867. En el mismo caso, y en igual sentido, nos expresamos así:

> "<u>La recurrente no es un tercero por ser parte inextricablemente vinculada al contratista independiente y al empleado de éste dentro del orden jurídico dictado por el Art. 19 de la Ley</u>. El principal contratante o dueño de la obra no puede considerarse tercero, dice Schneider. [escolio

---

[18]    11 L.P.R.A. sec. 32.

omitido]. Concurre Larson al dictaminar que en aquellas jurisdicciones como la nuestra y las de cuarenta y tres estados donde la Ley impone responsabilidad al contratista general por las lesiones del obrero del subcontratista no asegurado, el contratista general se convierte en efecto en patrono a los fines de la ley de compensaciones, y es obvio que debe tener inmunidad de patrono y no podrá considerársele 'tercero'. [cita omitida]." (Énfasis suplido).

Siguiendo la postura expresada por este Tribunal, entendemos que un patrono indirecto que efectivamente tiene una relación contractual con un patrono real y una relación fáctica con los trabajadores de éste es un patrono estatutario. El hecho de que no cumpla con su obligación legal de asegurar a dichos empleados, cuando su patrono directo no lo haya hecho, no lo convierte en tercero por una razón básica: ese hecho no hace desaparecer la relación que hemos descrito que existe entre el patrono estatutario, la compañía con la que contrató y los trabajadores de ésta; es decir, el hecho de que no cumpla con la obligación de asegurar no lo convierte en una persona extraña, ajena y separada del contratista y de los empleados de éste.

Es más, debemos tener presente que un patrono directo no deja de serlo y se convierte en tercero por no haber cumplido con su obligación legal de asegurar a sus trabajadores. El efecto de tal incumplimiento es, como hemos explicado, el privar a dicho patrono de la inmunidad que la ley concede a aquel que asegure a sus empleados ante el Fondo. Somos del criterio que igual tratamiento merece el patrono estatutario.

Por todo lo anterior, concluimos que un patrono indirecto que incumple su obligación de asegurar a los trabajadores del patrono real que éste no ha asegurado mantiene su condición de patrono estatutario pero debe considerarse para todos los efectos legales como un patrono no asegurado. Es decir, se convierte en un patrono estatutario no asegurado sujeto a los dos remedios que la ley reconoce al empleado lesionado para tales casos, la compensación de la Comisión Industrial y la acción civil por los daños y perjuicios causados.

IV

Una vez resuelta la primera controversia señalada, nos corresponde resolver en qué momento comienza a transcurrir el término de un (1) año de prescripción de la acción de daños y perjuicios instada contra un patrono estatutario no asegurado.

En Vega Lozada v. J. Pérez & Cía, Inc., supra, resolvimos que el término prescriptivo para ejercitar una acción de daños y perjuicios en contra de un patrono no asegurado comienza a transcurrir desde la fecha en que el Fondo notifica al lesionado que dicho patrono no está asegurado. Los fundamentos esgrimidos en aquel caso nos sirven de base para concluir que el inicio del término de la acción contra un patrono estatutario no asegurado es también la fecha de notificación del Fondo sobre la falta de seguro de dicho patrono estatutario. Veamos.

Nuestra jurisprudencia ha establecido que el punto de partida del término prescriptivo de una acción de daños y perjuicios es la fecha en que el agraviado conoció tanto el daño como quién fue el autor del mismo; ello, porque sólo de ese modo el lesionado puede ejercitar efectivamente la acción. Toledo Maldonado v. Cartagena, Opinión y Sentencia de 21 de diciembre de 1992; Riley v. Rodríguez de Pacheco, 119 D.P.R. 762 (1987); Colón Prieto v. Géigel, 115 D.P.R. 232 (1984). En ese sentido, también hemos resuelto que viola el derecho a un debido proceso de ley aquella disposición sobre prescripción que exija a los demandantes instar su acción antes de que éstos puedan tener conocimiento de que tal causa de acción existe a su favor. Alicea v. Córdova, 117 D.P.R. 676 (1986). El fundamento básico para todo ello es que no puede ejercitarse una acción si de buena fe el titular desconoce que tiene derecho a ejercitarla. Por ello, si el desconocimiento que impide ejercer la acción se debe a la falta de diligencia del reclamante, no aplica esta doctrina liberal que hemos desarrollado sobre la prescripción. Vega Lozada v. J. Pérez & Cía, Inc., supra; López v. Autoridad de Carreteras, Opinión y Sentencia de 5 de mayo de 1993.

Como hemos reiterado, la acción de daños y perjuicios contra un patrono es de carácter excepcional ya que sólo procede en los casos en que el patrono no se encuentra asegurado ante el Fondo. Precisamente por ello, como dijimos en Vega Lozada v. J. Pérez & Cía, Inc., supra, "el

conocimiento de si el patrono estaba asegurado o no adquiere especial importancia al momento en que se contempla incoar la acción". Si el obrero lesionado desconoce el elemento crucial de que su patrono no está asegurado, tampoco puede conocer que ha nacido a su favor una acción de daños y perjuicios en contra del patrono que de otro modo no existiría. En este punto, adquiere especial relevancia la presunción jurídica de que la Ley de Compensaciones por Accidentes del Trabajo, que exige al patrono estatutario asegurar a los trabajadores del patrono que contrate cuando éste no lo haga, ha sido cumplida. Véase el inciso 32 de la Regla 16 de las de Evidencia de 1979, 32 L.P.R.A. Ap. IV R.16 (32).[19]

Argumenta la parte recurrida que el inicio del término prescriptivo para accionar contra un patrono estatutario debe ser la fecha de notificación al obrero de que el patrono directo no está asegurado. <u>No</u> le asiste la razón. El simple hecho de que el patrono directo del lesionado no esté asegurado no implica necesariamente que el patrono estatutario no goce de inmunidad ante ese tipo de acción. Por el contrario, es precisamente en tales casos cuando

---

[19]    La Regla 16 de Evidencia establece:

"Las presunciones son aquellas establecidas por ley o por decisiones judiciales. Entre las presunciones controvertibles se reconocen las siguientes:
                        . . . .
32. Que la ley ha sido acatada. . .". 32 L.P.R.A. Ap. IV R 16.

surge la obligación del patrono estatutario de asegurar al empleado; por ello, el obrero al que no se le notifica por el Fondo que dicho patrono tampoco está asegurado puede descansar en la presunción de que ha cumplido con su deber legal de asegurarlo.

Por todo lo anterior, resolvemos que el inicio del término prescriptivo de un año previsto para acciones de daños y perjuicios instadas contra un patrono estatutario comienza a transcurrir desde la fecha en que se notifique al lesionado que dicho patrono no está asegurado.

V

La controversia presentada ante nos en el caso de autos se reduce a determinar si la acción de daños y perjuicios radicada por el empleado-lesionado en contra de su patrono indirecto, Bristol Myers, se halla o no prescrita. Hacia dicha cuestión se orientan los errores planteados.

Bristol Myers contrató con la compañía de trabajo temporal Top Notch la prestación de unos determinados servicios en su planta física. Fue en ese contexto en el que el peticionario, que era empleado de Top Notch, empezó a laborar en la planta física de trabajo de Bristol Myers. Al aplicar las doctrinas jurídicas esbozadas con anterioridad a los hechos ante nos, debemos concluir que Bristol Myers es un patrono estatutario no asegurado que responde en daños y perjuicios al obrero lesionado, el Sr. Martínez Rodríguez.

La relación contractual de Bristol Myers con Top Notch provoca el nacimiento de la obligación legal común de asegurar a los empleados de Top Notch. Así, según establece el Artículo 19 de la Ley de Compensaciones por Accidentes del Trabajo[20], Bristol Myers tenía el deber de asegurar al peticionario si Top Notch, su patrono directo, no lo hacía. Sólo de este modo Bristol Myers hubiese gozado de la inmunidad contra acciones de daños y perjuicios que prevé la ley. De los hechos transcritos al inicio de esta Opinión se desprende que Top Notch incumplió con su obligación legal de asegurar a sus trabajadores, entre ellos al peticionario. Tal como adelantamos, Top Notch realizó tardíamente el pago del segundo semestre del año 1991-1992 de modo que el accidente objeto de nuestra consideración ocurrió con posterioridad a la fecha de vencimiento del pago y con anterioridad a la fecha en que se realizó el mismo. A base de estas consideraciones, el Fondo declaró a Top Notch patrono no asegurado mediante resolución dictada el 15 de abril de 1993 que fue notificada al lesionado.

A tenor con la doctrina analizada, Bristol Myers tenía la obligación de asegurar al peticionario si quería quedar cobijada por la inmunidad prescrita por la Ley de Compensaciones por Accidentes del Trabajo; sin embargo, no cumplió con tal obligación. Debido a ello, debemos considerar a Bristol Myers, la recurrida, como un patrono

---

[20]    11 L.P.R.A. sec. 20.

estatutario no asegurado que puede ser demandado por los daños y perjuicios causados al trabajador por un accidente laboral en el que mediara su culpa o negligencia.

Decidimos, en consecuencia, la interrogante de si la acción de daños y perjuicios que el lesionado radicó contra Bristol Myers el 30 de diciembre de 1994 se encontraba o no prescrita. Hemos resuelto que la fecha determinante para el inicio del cómputo del término de un (1) año de la acción de daños y perjuicios instada contra un patrono estatutario no asegurado es la fecha en que el Fondo le notifique al lesionado que dicho patrono estatutario incumplió su obligación de asegurar. Según surge del propio alegato de la recurrida, "... la [Corporación del Fondo del Seguro del Estado] no envió al Peticionario una notificación de patrono no asegurado sobre [Bristol Myers]."[21] Alega la recurrida que el Fondo no acostumbra a notificar la falta de seguro por el patrono estatutario debido a que normalmente desconoce la relación establecida entre dicho patrono estatutario y los trabajadores del contratista. Sin embargo, una lectura de la Decisión del Administrador emitida el 15 de abril de 1993, por la cual se declaró patrono no asegurado a Top Notch, demuestra que el Fondo conocía que el accidente se produjo en la planta de trabajo de Bristol Myers y, a pesar de ello, no emitió una decisión

---

[21]   Página Núm. 15 del Alegato de la demandada recurrida, Bristol Myers Barcelona, Inc.

respecto a si ésta última compañía había cumplido o no con su obligación de asegurar al lesionado.

A pesar de esta falta de notificación de que Bristol Myers no estaba asegurada ante el Fondo, el lesionado admite que conoció dicho dato a la fecha de la notificación del alta definitiva, es decir, el 10 de junio de 1994. La recurrida no impugna este hecho sino que argumenta que el lesionado debió investigar si existía o no dicho seguro desde la fecha de la notificación de que Top Notch era un patrono no asegurado. Como ya hemos argumentado, el hecho de que el obrero presumiera que Bristol Myers había cumplido con su obligación legal de asegurar no es una falta de diligencia de su parte; bien al contrario, dicha presunción es una legítima reconocida expresamente por el inciso 32 de la Regla 16 de Evidencia.[22]

Por lo tanto, el término prescriptivo de un año para radicar la demanda por daños y perjuicios contra Bristol Myers comenzó a transcurrir en el presente caso el 10 de junio de 1994, fecha en que el lesionado conoció todos los datos necesarios para saber que tenía a su favor una causa de acción contra su patrono estatutario. El obrero radicó la demanda ante el Tribunal de Primera Instancia el día 30 de diciembre de 1994. Por lo tanto, la acción en daños y perjuicios por él radicada no se hallaba prescrita.

## VI

A tenor con todo lo expuesto, procede dictar Sentencia revocatoria de la sentencia emitida por el Tribunal de Circuito de Apelaciones y devolver el caso al foro de instancia para la continuación de los procedimientos de conformidad con lo aquí resuelto.


**FRANCISCO REBOLLO LÓPEZ**
**Juez Asociado**

---

[22] **32 L.P.R.A. Ap. IV R.16 (32).**

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Carlos Martínez Rodríguez
y otros

    Demandantes-peticionarios

       v.                      CC-97-272       CERTIORARI

Bristol Myers Barceloneta,
Inc. y sus Compañías de
Seguros A y B

    Demandados-Recurridos


SENTENCIA

San Juan, Puerto Rico, a 26 de enero de 1999


       Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida por el Tribunal de Circuito de Apelaciones, Circuito Regional de Arecibo y Utuado, y se devuelve el caso al Tribunal de Primera Instancia, Sala de Arecibo, para la continuación de procedimientos ulteriores consistentes con lo aquí resuelto.

       Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre en el resultado sin opinión escrita.


                    Isabel Llompart Zeno
             Secretaria del Tribunal Supremo